OPINION
{¶ 1} The defendant-appellant, Tobias Griffin, appeals the April 30, 2003 judgment of the Common Pleas Court of Allen County, Ohio, finding him guilty of seven counts of felonious assault, each with a firearm specification, as well as one count of improperly discharging a firearm into a habitation, and sentencing him to twenty-seven years in prison.
 {¶ 2} The relevant facts of this appeal are as follows. On the evening of November 23, 2002, Marcus Brown was celebrating his birthday with several people at the Skyline Bar. At some point in the evening, Marcus noticed Henry Robinson in the bar. Marcus approached Henry and questioned why he was there because the two did not like one another. The two men began arguing, and the defendant, Tobias Griffin, intervened. As a result of Tobias' intervention, Marcus left that area of the bar and went back to his friends.
 {¶ 3} Shortly after the bar closed in the early morning hours of November 24, 2002, several people, including Marcus, Henry, and Tobias, went to the Shell Station at the intersection of Market and Metcalf Streets in Lima, Ohio. Marcus approached a vehicle driven by Labarron Manley. Henry was seated in the passenger seat of this vehicle. At some point, the passenger side window was rolled down and Marcus struck Henry in the face. Henry exited the vehicle, and the two men continued fighting. Eventually, the fighting ceased after Henry received several blows. Marcus and several others then left the Shell Station and proceeded to the home of Marcus' sister, Tinisha Brown, at 675 Elizabeth Street to continue the birthday party. Shortly thereafter, several shots were rapidly fired into Tinisha's home. As a result, seven people were wounded by multiple gunshots, but no one was killed.
 {¶ 4} At the time of the shooting, Officer Kelly Ricker of the Lima Police Department was finishing a call in the vicinity of the Elizabeth Street home. Upon hearing the gunfire, he immediately proceeded to the location of the shots. As he arrived at the scene, he witnessed several people fleeing the home and was ushered inside by those at the scene, who informed him that several people had been shot. Emergency personnel quickly arrived, as did other officers and detectives. Once the scene was secured, an investigation into the shooting began and forty-eight .9mm Luger caliber shell casings were recovered. In addition, seven .40mm Smith Wesson caliber shell casings were recovered. Upon speaking with those who were present at the scene during the shooting, the police suspected that Tobias had committed the shooting. His vehicle, a maroon Chevrolet Caprice, was recovered within hours of the shooting and gunshot residue was found on the passenger side door. By noon of that day, Tobias turned himself into the police but denied any involvement with the shooting.
 {¶ 5} On January 16, 2003, the grand jury returned an eight-count indictment against Tobias. Seven of these counts were for felonious assault, a violation of R.C. 2903.11(A)(2), and each carried a firearm specification in accordance with R.C.2941.144(A). In addition, these seven counts included the name of the victim for each count: Titus Brown, Marcus Brown, Olivia Downton, Rotisha Smith, Laron Johnson, Sonniesha Jones, and Jaqueta Jones. The eighth count against Tobias alleged that he improperly discharged a firearm into a habitation in violation of R.C. 2923.161(A)(1). Tobias entered a plea of not guilty as to each count, and a two-day bench trial was held on April 28-29, 2003.
 {¶ 6} During the trial, Latrice Long testified that she and Malcolm Martin were parked outside of 675 Elizabeth Street around 3:00 a.m. on November 24, 2003, when she noticed a car turn onto Elizabeth Street. As the car passed her, she noticed Tobias, whom she knew for over ten years, in the passenger seat. She specifically noticed that Tobias' hair was in a zigzag pattern of cornrows, which was the same hairstyle he had when he turned himself in to the police on the day of the shooting. She then witnessed the car slow down and saw Tobias repeatedly firing shots into the home. The car then left, and she and Malcolm fled the scene. Upon discovering that her cousin was among the victims, Latrice went to the hospital and told the police what she had witnessed.
 {¶ 7} Onyale Jones also testified at the trial on behalf of the State. He stated that he was at the Shell Station when Marcus and Henry were fighting. He further testified that Tobias asked him why Marcus had beaten Henry but that he did not know the reason for the altercation. According to Onyale, Tobias then told Onyale that he was "fitting to go get the heat[,]" which meant that he was going to get a gun.
 {¶ 8} At the conclusion of the trial, the court found Tobias guilty of each count and attendant specification. The court then proceeded to sentencing. Tobias was sentenced to three years of imprisonment each on the seven counts of felonious assault to be served consecutively to one another, eight years on the eighth count, to be served concurrently with the first seven counts, and six years for the specifications, which merged with one another, to be served consecutively to the first seven counts for an aggregate total of twenty-seven years. On May 13, 2003, Tobias filed a motion for a new trial. In support of this motion, Tobias included the affidavit of Rotisha Smith, one of the shooting victims, which he claimed illustrated that Marcus Brown and Latrice Long provided false testimony during the trial. The trial court denied Tobias' motion. This appeal followed, and Tobias now asserts three assignments of error.
The State failed to provide relevant discovery material whichwas generated by the lima police department during the scope ofthe investigation.
 The trial court's determination in denying the defendant'smotion for a new trial was an abuse of discretion of the TrialCourt Judge.
 The defendant's counsel was ineffective due to the lack ofinvestigatory and trial preparation.
 First Assignment of Error {¶ 9} In his first assignment of error, Tobias maintains that the State of Ohio violated his right to due process by withholding the information provided to it by Rotisha Smith. The United States Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland (1963),373 U.S. 83, 87. In recognition of the Brady requirement, the Criminal Rules require the prosecutor to disclose "all evidence * * * favorable to the defendant and material either to guilt or punishment." Crim.R. 16(B)(1)(f); see, also, State v. Martin,151 Ohio App.3d 605, 2003-Ohio-735, at ¶ 52. However, "the principles of Brady do not apply unless the evidence is material to mitigation, exculpation or impeachment." State v.Keene (1998), 81 Ohio St.3d 646, citing Calley v. Callaway
(5th Cir. 1975), 519 F.2d 184, 221. This Court has further held that "[i]n determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v.Yarbrough (Apr. 30, 2001), 3rd Dist. No. 17-2000-10, unreported, 2001 WL 454683. "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id.
 {¶ 10} Here, Rotisha Smith's affidavit states that she was outside of the Elizabeth Street home shortly before the shooting occurred, that she never saw Latrice Long in a car with Malcolm Martin, and that she at no point saw anyone waiting in a car across the street from the home. The affidavit further states that she was inside the home when the shooting began and that she witnessed Marcus Brown and two others return fire from the home. In addition, Rotisha attested that she heard unidentified people in the home state that Henry Robinson was the one who shot at the house, that a gun clip, which did not belong to her but that she believed belonged to Marcus, was found in her pocket after the shooting, that she provided all of this information to the detectives, and that they did not take her statement. Tobias now maintains that this information was material in that it indicated an alternative theory of another shooter, namely Henry Robinson, that others fired shots from inside the home, and that Marcus falsely testified about his actions during the shooting. We disagree.
 {¶ 11} During the trial, Tobias testified on his own behalf. Specifically, Tobias testified that Henry asked him to take him to get a gun for protection, that he went to his aunt's house and got a gun for Henry, that he drove Henry to the Elizabeth Street home, believing that Henry was only going to fistfight with Marcus, and that upon realizing that there was a large number of people in the home, he told Henry a fistfight was not a good idea and tried to leave the scene. However, according to Tobias, Henry began shooting at the home to Tobias' surprise. This testimony, coupled with the undisputed testimony that Marcus and Henry had been in two previous altercations that day, already provided the trial court with the alternative theory of another person being the shooter. Furthermore, Rotisha merely attested to what she heard others, none of whom were identified, state about the identity of the shooter during a time of undisputable confusion, all of which was hearsay, rather than her own eyewitness account of the shooter's identity.
 {¶ 12} As for her statements that Marcus and two others returned fire, evidence that another gun was also fired at some point during the incident was before the trial court by way of the seven .40 mm Smith Wesson caliber shell casings found at the scene and admitted into evidence. Even if this evidence casts doubts on Marcus' credibility as being in conflict with his testimony that he laid down when the shooting began and did not leave the home, his actions during the shooting were not material to Tobias' guilt and the rest of his testimony had little to do with identifying Tobias as the shooter, the only point truly in dispute at the trial.
 {¶ 13} Lastly, the remainder of Rotisha's affidavit merely amounted to the fact that she did not see anything. Given the limited information, as well as the nature of such information, contained in Rotisha's affidavit, we do not find that there was a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, especially in light of the eyewitness testimony of Latrice Long and supporting testimony of Onyale Jones. Therefore, the first assignment of error is overruled.
 Second Assignment of Error {¶ 14} Tobias next asserts that the information contained in Rotisha's affidavit was sufficient to warrant a new trial. The Criminal Rules provide that:
A new trial may be granted on motion of the defendant for anyof the following causes affecting materially his substantialrights:
* * *
(2) Misconduct of the jury, prosecuting attorney, or thewitnesses for the state;
* * *
(6) When new evidence material to the defense is discovered,which the defendant could not with reasonable diligence havediscovered and produced at the trial.
Crim. R. 33(A)(2), (6). In determining whether to grant a new trial, a trial court is afforded a high level of discretion and such a determination may not be reversed by an appellate court absent an abuse of that discretion by the trial court. State v.Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus.
 {¶ 15} Notably, a new trial may only be granted for causes that materially affect a defendant's substantial rights. Given this Court's determination that Tobias' substantial rights were not materially affected under our discussion of the first assignment of error, we do not find that the trial court erred in denying his motion for a new trial. Moreover, we do not find that the information contained in the affidavit demonstrates that the prosecution engaged in any misconduct. Furthermore, the identity of Rotisha Smith and her potential to be a witness was known to the defense from the time of the indictment, as she was specifically named as the victim in Count Four, and her name was listed as a potential witness in the discovery provided to defense counsel and filed with the trial court on February 5, 2003. Accordingly, the defense could have ascertained what information she possessed with reasonable diligence prior to trial. Therefore, the second assignment of error is overruled.
 Third Assignment of Error {¶ 16} In his last assignment of error, Tobias maintains that his trial counsel was ineffective. The State of Ohio has adopted the two-part test for determining whether a criminal defendant has been denied the effective assistance of counsel established by the United States Supreme Court in Strickland v. Washington
(1984), 466 U.S. 668. See State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. "A convicted defendant must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Jones, (Sept. 27, 2000), Auglaize App. No. 02-2000-07, unreported, 2000 WL 1420271, quotingStrickland, 466 U.S. at 688, 694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley, 42 Ohio St.3d at 142. Further, we are also guided by the presumption that attorneys licensed by the State of Ohio "provide competent representation."Jones, supra, citing State v. Hoffman (1998),129 Ohio App.3d 403, 407. The second prong then requires a probability sufficient to undermine the confidence in the outcome of the proceedings. Id.
 {¶ 17} In the case sub judice, Tobias contends that his counsel was ineffective for not investigating his case more, such as by interviewing witnesses like Rotisha Smith, who would have provided information that suggested that another person was the shooter. However, nothing in the record before this Court indicates what trial counsel did or did not do in preparation for this case. Absent any indication in the record before this Court that counsel failed to properly investigate the case and adequately prepare for trial and given the presumption of competent representation, we cannot conclude that counsel's performance fell below an objective standard of reasonableness. Even assuming arguendo that counsel's performance was deficient, as previously discussed, the information ascertained from Rotisha's affidavit does not demonstrate that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Accordingly, the third assignment of error is overruled.
 {¶ 18} For these reasons, the judgment of the Common Pleas Court of Allen County, Ohio, is affirmed.
Bryant and Cupp, JJ., concur.