The STATE of Ohio, Appellee,

v.

KEITH, Appellant.

[Cite as *State v. Keith,* 176 Ohio App.3d 260, 2008-Ohio-741.]

Court of Appeals of Ohio,
Third District, Crawford County.

No. 3–07–8.

Decided Feb. 25, 2008.

Clifford J. Murphy, Assistant Prosecuting Attorney, for appellee.

Tyson Fleming and Rachel Troutman, Ohio Public Defender's Office, for appellant.

ROGERS, Judge.

{¶ 1} Defendant-appellant, Kevin Keith, appeals the judgment of the Crawford County Court of Common Pleas denying his petition for postconviction relief. On appeal, Keith asserts that the trial court erred in denying his petition for postconviction relief without first allowing him to conduct discovery, that the trial court erred in denying his petition for postconviction relief without conducting an evidentiary hearing, and that the trial court's findings of fact and conclusions of law were arbitrary and inaccurate. Based on the following, we affirm the judgment of the trial court.

{¶ 2} In February 1994, the Crawford County Grand Jury indicted Keith on three counts of aggravated murder in violation of R.C. 2929.02, with capital-offense specifications, and on three counts of attempted aggravated murder in violation of R.C. 2903.01 and 2923.02, felonies of the first degree. The indictment arose from an incident during which Marichell D. Chatman, her seven-year-old daughter, Marchae D. Chatman, her cousins, Quanita M. Reeves and Quinton M. Reeves, her aunt, Linda Chatman, and Richard Warren were shot in Marichell's apartment. Marichell, Marchae, and Linda died as a result of the shooting, and Quanita, Quinton, and Richard were seriously injured.

{¶ 3} In March 1994, Keith entered a plea of not guilty to all counts in the indictment.

{¶ 4} In May 1994, Keith filed a notice of alibi. Additionally, the case proceeded to a jury trial, at which the jury convicted Keith on all six counts of the indictment as charged and recommended the death penalty for the aggravated murder convictions.

{¶ 5} In June 1994, the trial court sentenced Keith to death on the aggravated murder convictions and to a 7- to 25-year prison term on each of the attempted-aggravated-murder convictions, to be served consecutively. Subsequently, Keith appealed his conviction and sentence.

{¶ 6} In April 1996, this court affirmed Keith's conviction and sentence, *State v. Keith* (Apr. 5, 1996), 3d Dist. No. 3-94-14, 1996 WL 156710, and also issued a

separate opinion regarding Keith's death sentence in conformity with R.C. 2929.05(A). *State v. Keith* (1996), 3d Dist. No. 3–94–14, 1996 WL 156716. Subsequently, Keith appealed to the Supreme Court of Ohio.

{¶ 7} In September 1996, while his direct appeal was pending, Keith filed his first petition for postconviction relief in the trial court, alleging that he had been denied effective assistance of counsel and attaching numerous exhibits that were not part of the trial record.

{¶ 8} In December 1996, Keith filed a supplemental petition for postconviction relief, in which he alleged ineffective assistance of counsel and requested an evidentiary hearing.

{¶ 9} In October 1997, the Supreme Court of Ohio unanimously affirmed Keith's conviction. *State v. Keith* (1997), 79 Ohio St.3d 514, 684 N.E.2d 47, reconsideration denied (1997), 80 Ohio St.3d 1450, 686 N.E.2d 276, certiorari denied (1998), 523 U.S. 1063, 118 S.Ct. 1393, 140 L.Ed.2d 652.

{¶ 10} In February 1998, the trial court denied Keith's first petition for postconviction relief, without granting an evidentiary hearing, in a 16–page opinion in which it addressed all of his arguments, as well as each of his attached exhibits, in concluding that his petition lacked merit.

{¶ 11} In March 1998, Keith appealed the trial court's denial of his first petition for postconviction relief.

{¶ 12} In August 1998, this court affirmed the trial court's denial of Keith's first petition for postconviction relief. *State v. Keith* (Aug. 19, 1998), 3d Dist. No. 3–98–05, 1998 WL 487044.

{¶ 13} In September 1999, Keith filed a habeas corpus petition in the United States District Court, presenting eight grounds for relief.

{¶ 14} In June 2001, the United States District Court denied Keith's petition for habeas corpus. Thereafter, Keith appealed the denial and sought a certificate of appealability.

{¶ 15} In March 2003, the United States Court of Appeals granted a certificate of appealability on six of Keith's grounds for relief.

{¶ 16} In August 2004, Keith filed a second petition for postconviction relief with the trial court, setting forth three grounds for relief: (1) that the trial prosecutors did not timely provide defense counsel with all relevant exculpatory evidence, (2) that new information received after the trial indicated that two persons were involved in the homicides and that there was another possible suspect, and (3) that the cumulative effects of these errors deprived him of fundamental fairness, resulting in his conviction and sentence being void or

voidable. Keith submitted the following seven "exhibits" as documentary evidence in support of his petition:

Exhibits 1 and 2. "[T]he prosecutor had actual or constructive possession of police reports that memorialized that [sic] at least one eyewitness report that merely described a "pretty big guy with a mask". [Exhibit 1] This eyewitness makes a second statement after talking with Captain Michael Corwin wherein he claims that the person was Kevin Keith. [Exhibit 2] The first statement was never turned over to the defense." [By implication, the second statement was turned over to the defense.]

Exhibit 3. "The prosecutor had actual or constructive knowledge that this eyewitness also stated that Kevin Keith was too big to be the shooter. [Exhibit 3] This information was not turned over to the defense."

Exhibit 4. "The prosecutor presented John Foor as a witness in rebuttal. Foor testified that Richard Warren wrote the name "Kevin" on notepaper, but that he did not keep that paper. (T. 778–780) No notes were turned over to the defense. Six pages of notes actually existed. [Exhibit 4] These notes reveal the name "Kevin" in what clearly appears to be different handwriting from the rest of the writing, which obviously is Richard Warren's. The notes also reveal the name "Damon"—another person involved in drug sales in the area."

Exhibit 5. "The prosecutor had actual or constructive knowledge that Rodney Melton was under indictment from Crawford County for drug sales occurring on August 31, 1993. [Exhibit 5] The apparent informant in that case was Rudell Chatman. Chatman was the informant in a pending indictment Kevin Keith faced for drug sales alleged to have occurred on August 31, 1993. The State claimed the motive for the killings was the fact that Rudell Chatman informed on Keith. The prosecutor did not turn over any information regarding the fact that Rudell Chatman had also informed on Rodney Melton."

Exhibit 6. "New information received after the trial indicates that two persons were involved in the homicides."

Exhibit 7. "New information also indicates that the lead investigator helped Rodney Melton, a suspect in the crime, with clearing up some matter involving Melton living at the scene of the crime. No information was provided to the defense about the ongoing relationship between the lead investigator and Rodney Melton."

Judgment entry at 17–18. Keith also requested that he be permitted to conduct discovery, that he be permitted to amend his postconviction petition upon completion of discovery, that his capital convictions and sentences be vacated, and that an evidentiary hearing be conducted on the matter.

{¶ 17} In September 2004, the state moved for summary judgment against Keith's second petition for postconviction relief on the basis that all issues presented were barred by res judicata and because the petition was untimely pursuant to R.C. 2953.21.

{¶ 18} In July 2006, the United States Court of Appeals denied Keith's writ of habeas corpus. *Keith v. Mitchell* (C.A.6, 2006), 455 F.3d 662, petition for rehearing denied en banc (C.A.6, 2006), 466 F.3d 540, certiorari denied (2007), —— U.S. ——, 127 S.Ct. 1881, 167 L.Ed.2d 369.

{¶ 19} In February 2007, the trial court granted summary judgment in favor of the state and against Keith on his second petition for postconviction relief[1] and, alternatively, dismissed Keith's petition in a 35–page opinion, without permitting discovery or an evidentiary hearing. In doing so, the trial court stated:

> The essence of Kevin Keith's successor Petition for Post Conviction Relief is that the newly discovered evidence demonstrated in the proffered exhibits supports a collection of *Brady* violations, and that these exhibits, as a whole, support a theory of innocence. On this issue, this court finds that reasonable minds can come to only one conclusion—that being unfavorable to [Keith] and favorable to the State. This court finds that, on the face of the record the evidence offered by [Keith] fails to demonstrate substantive grounds for relief. This court notes that, according to the United States Court of Appeals for the Sixth Circuit, [Keith] does not contend that he is actually innocent.

In making this determination, the trial court cited "overwhelming evidence" against Keith, including the following:

1. Approximately 8 hours after the shootings, Richard Warren, while recovering from surgery, wrote the name "Kevin" on a piece of paper as the name of his assailant.

2. Later in the day, Warren selected Kevin Keith from a photo array of six individuals.

3. Investigators recovered a total of twenty-four cartridge casings from the crime scene area, which had all been fired from the same gun.

4. On the night of the murders, [Keith] picked up his girlfriend, from work at the entrance to the General Electric plant where another matched casing was found.

5. Nancy Smathers, a resident of the Bucyrus Estates, heard popping noises, looked outside her window on the night of the murders, and observed a

---

**1.** The lengthy delay between Keith's second petition for postconviction relief and the trial court's judgment entry resulted from a stipulation between Keith and the state that the state petition should be suspended pending a decision by the United States Court of Appeals on the writ of habeas corpus.

large stocky man making his escape, whom she was able to identify six weeks later as Kevin Keith, from a television news story depicting [Keith].

6.   The man Smathers identified jumped into a light-colored, medium-sized car, a description consistent with the automobile Kevin Keith was known to have had access.

7.   Smathers witnessed a number of events: the car slid into a snow bank; the perpetrator got out to rock the car, but the dome light did not operate when the driver's door opened; the light for the license plate was out; the perpetrator was able to free the vehicle from the snow bank.

8.   At the snow bank where Smathers witnessed the getaway car slide, investigators made a cast of the tire tread and of the indentation in the snow bank made by the car's front license plate number—"043."

9.   The indentation from the license plate matched the last three numbers of a 1982 Oldsmobile Omega seized from Melanie Davison shortly after she visited [Keith] in jail, under the pseudonym "Sherry Brown" a few weeks after the murders.

10.   The Oldsmobile was registered to Alton Davison, Melanie's grandfather, and was also regularly used by Melanie. Alton Davison had put four new tires on the Omega six months prior to the murders. He estimated that by February 1994, the new tires had been driven less than 3,000 miles without any problems or need for replacement.

11.   The cast taken of the tire tread at the crime scene did not match tires found on the Oldsmobile Omega one month later, but the cast did match the tread of the tires purchased by Alton Davison—this, based upon the tire brochures.

12.   The tires found on the Oldsmobile Omega after the murders had been manufactured but a month before the murders.

13.   It will be recalled that the perpetrator put a gun to Marichell's head, complaining bitterly about Marichell's brother "ratting on people." Rudel Chatman, the victim's brother was a police informant in a drug investigation involving Kevin Keith. And the month prior to the murders, Keith was charged with several counts of aggravated drug trafficking.

14.   The description of the vehicle by Nancy Smathers—a light colored, medium-sized car—generally fit the description of the Oldsmobile Omega owned by Alton Davison and frequently driven by his granddaughter Melanie, one of the girlfriends of Kevin Keith.

15.   The description of the perpetrator by Nancy Smathers—a large, stocky black man—generally fits and continues to fit (from this court's observation of [Keith] at the hearing) [Keith].

16. It will be recalled that after drinking a glass of water through a pulled-up portion of a turtleneck sweater, the perpetrator pulled a nine-millimeter handgun from a plastic bag that he was carrying. Kevin Keith was seen earlier in the day in the neighborhood by a neighbor while he (Keith) was carrying a bag.

(Footnotes omitted.)

{¶ 20} It is from this judgment that Keith appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

The trial court erred when it denied petitioner's post-conviction petition without first allowing him to conduct discovery.

### Assignment of Error No. II

The trial court erred in dismissing Keith's post-conviction petition when he presented sufficient operative facts to merit relief or, at minimum, an evidentiary hearing.

### Assignment of Error No. III

The trial court's findings of fact and conclusions of law were arbitrary and inaccurate.

{¶ 21} The following standard of review applies throughout.

### Standard of Review

{¶ 22} "Whether to entertain a second or successive petition for post-conviction relief lies within the sound discretion of the trial court, and that ruling will not be disturbed on appeal absent a clear showing of abuse of discretion." *State v. Hayden,* 2d Dist. No. 21764, 2007-Ohio-5572, 2007 WL 3028074, ¶ 12, citing *State v. Perdue* (1981), 2 Ohio App.3d 285, 286, 2 OBR 315, 441 N.E.2d 827. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.

### Assignment of Error No. I

{¶ 23} In his first assignment of error, Keith contends that the trial court erred when it denied his postconviction petition without first allowing him to conduct discovery. Specifically, Keith claims that without power to conduct discovery, he was limited in his ability to procure evidence to demonstrate that a hearing was

warranted, in violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. We disagree.

{¶ 24} R.C. 2953.21, Ohio's postconviction-relief statute, provides " 'a remedy for a collateral attack upon judgments of conviction claimed to be void or voidable under the United States or the Ohio Constitution.' " *State v. Scott-Hoover*, 3d Dist. No. 3–04–11, 2004-Ohio-4804, 2004 WL 2026410, ¶ 10, quoting *State v. Yarbrough* (Apr. 30, 2001), 3d Dist. No. 17–2000–10, 2001 WL 454683. Thus, a petitioner must establish that there has been a denial or infringement of his constitutional rights in order to prevail on a petition for postconviction relief, *Scott-Hoover*, supra; R.C. 2953.21(A)(1), and "[the] post conviction proceeding is not a full blown retrial of the prisoner's case, but adjudication is confined solely to claimed constitutional violations." *State v. Robison* (June 19, 1989), 4th Dist. No. 88 CA 15, 1989 WL 72802. Additionally, a postconviction-relief hearing is not merited for claims that were raised or could have been raised on direct appeal, because those claims are barred by res judicata. *Yarbrough*, citing *State v. Reynolds* (1997), 79 Ohio St.3d 158, 679 N.E.2d 1131.

{¶ 25} In order to be timely, a petition for postconviction relief must "be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court." R.C. 2953.21(A)(2). Petitions filed outside of the 180–day time period and successive postconviction petitions are prohibited by R.C. 2953.23(A) unless certain exceptions apply. *Hayden*, 2007-Ohio-5572, 2007 WL 3028074, at ¶ 15. Such petitions are permitted only where both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on the right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

R.C. 2953.23(A); see also *State v. Findley*, 3d Dist. Nos. 3–07–16 and 3–07–17, 2007-Ohio-6706, 2007 WL 4374084, ¶ 17.

{¶ 26} Here, Keith argues that the trial court erred in denying his petition for postconviction relief without first allowing him to conduct discovery. However, "Ohio law is clear that discovery is not available in the initial stages of a postconviction proceeding." *State v. Cunningham*, 3d Dist. No. 1–04–19, 2004-Ohio-5892, 2004 WL 2496525, ¶ 69, citing *State v. Byrd* (2001), 145 Ohio App.3d 318, 332, 762 N.E.2d 1043; see also *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office* (1999), 87 Ohio St.3d 158, 718 N.E.2d 426. Postconviction review is not a constitutional right, but is a collateral civil attack on a judgment that is governed solely by R.C. 2953.21. *State v. Jackson*, 3d Dist. No. 1–04–31, 2004-Ohio-5350, 2004 WL 2260095, at ¶ 23, citing *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67; *Murray v. Giarratano* (1989), 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1. Thus, "a petitioner receives no more rights than those granted by the statute." Id, citing *State v. Calhoun* (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905. R.C. 2953.21 "does not confer upon the trial court the power to conduct and compel discovery under the Civil Rules." *Cunningham*, 2004-Ohio-5892, 2004 WL 2496525, at ¶ 69, citing *State v. Dean*, 149 Ohio App.3d 93, 2002-Ohio-4203, 776 N.E.2d 116, ¶ 10. Therefore, because discovery is not available in the initial stages of a postconviction proceeding, the trial court did not err in denying Keith's petition without allowing discovery.

{¶ 27} Accordingly, we overrule Keith's first assignment of error.

### Assignment of Error No. II

{¶ 28} In his second assignment of error, Keith argues that the trial court erred in dismissing his postconviction petition and/or granting the state's motion for summary judgment because he presented sufficient operative facts demonstrating that his constitutional rights had been violated to merit relief or discovery and an evidentiary hearing. Specifically, Keith claims that the prosecutor in his jury trial failed to turn over exculpatory and impeachment evidence favorable to him, that he presented several genuine issues of fact concerning his innocence, making a grant of summary judgment improper, and that he was prevented by the trial court from obtaining the factual information necessary to meet the standards of Civ.R. 56(C). We disagree.

{¶ 29} Where a petitioner for postconviction relief sets forth sufficient operative facts to establish substantive grounds for relief, a trial court should provide an evidentiary hearing. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 714 N.E.2d 905. Conversely, where the petitioner fails to set forth sufficient operative facts, a trial court may either (1) dismiss the petition without a hearing or (2) act on the state's motion for summary judgment by applying the standards in Civ.R. 56. R.C. 2953.21; *Calhoun*, 86 Ohio St.3d at 279, 714 N.E.2d 905, paragraph two of the syllabus.

## 1. Exculpatory/impeachment evidence

{¶ 30} In the first and second grounds for relief in his postconviction petition, Keith asserted that the prosecutor in his jury trial failed to turn over exculpatory and impeachment evidence favorable to the defense. This assertion was supported by exhibits including witness Jesse Delaney's first statement to police; information that an eyewitness did not believe that Keith was the perpetrator; pages of notes written by Warren, one of the victims; the indictment of Rodney Melton, an alleged alternate suspect, for selling drugs; and letters between Police Chief Michael Corwin, the lead investigator, and Melton.

{¶ 31} A prosecutor's suppression of evidence favorable to an accused violates due process rights where the evidence is material to guilt or punishment. *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. However, "[i]n order to constitute a violation of due process, the evidence withheld from Defendant must be (1) favorable to the defendant and (2) material to guilt or innocence." *State v. Coleman*, 2d Dist. Nos. 04CA43 & 04CA44, 2005-Ohio-3874, 2005 WL 1797040, ¶ 36, citing *Brady*, supra. " 'Evidence is deemed "material" only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different; a "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *State v. Watson* (1998), 126 Ohio App.3d 316, 322, 710 N.E.2d 340, quoting *U.S. v. Bagley* (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481.

{¶ 32} Here, Keith's first and second exhibits concerned Delaney's first statement to police that the perpetrator was a "pretty big guy with a mask, carrying a gun." Keith essentially argues that this statement conflicted with Delaney's later identification of the perpetrator as Keith after seeing his photograph. The trial court found that these two statements did not contradict each other.

{¶ 33} Keith's third exhibit is the transcript of a television newscast allegedly delivered on March 4, 1994, which states that an unidentified person "now says that Kevin Keith is too big" to be the perpetrator. The trial court determined that this evidence was outside the record and thus not barred by res judicata. However, the trial court found that this evidence was not probative and did not warrant an exploratory hearing.

{¶ 34} Keith's fourth exhibit consists of six pages of handwritten notes allegedly written by Warren while he was in the hospital. Keith asserts that the pages demonstrate that Warren did not write the name "Kevin" because it is not in his handwriting. The trial court found that this evidence was not probative, because Warren recovered from his injuries and testified at trial that he

communicated the name "Kevin" to his father via hand signals and his father wrote the name down. Additionally, Warren testified at trial that Keith was the perpetrator.

{¶ 35} Keith's fifth, sixth, and seventh exhibits consist of a three-count felony drug indictment of Melton from 1994 and written correspondence between Chief Corwin and Melton, which collectively suggest that Chief Corwin surmised, at one time, that another party had been involved in the shooting with Keith. The trial court found that despite this theory, the documents did not exculpate Keith. In support, the trial court noted that the shell casings in evidence came from a single weapon and that the accounts of three eyewitnesses to the shooting did not suggest that two perpetrators were involved.

{¶ 36} After examining each exhibit, the trial court concluded that Keith had not satisfied his burden of proof by clear and convincing evidence that but for constitutional error at trial, no reasonable factfinder would have found him guilty. In fact, the trial court concluded that

> none of the exhibits, in the judgment of this court, even meets a lesser burden of proof—that of the preponderance of the evidence. Furthermore, in some instances, for some of the exhibits, the proffer of evidence presented is neither neutral nor consistent with innocence, but, rather, corroborative of guilt.

{¶ 37} In light of the trial court's thorough examination of each exhibit and logical conclusions, we cannot find that the trial court's judgment was unreasonable, arbitrary, or unconscionable. Thus, we find that the trial court's grant of summary judgment to the state was not an abuse of discretion.

## 2. Material issues of fact

{¶ 38} Keith asserts that summary judgment was inappropriate because he presented several genuine issues of fact concerning his innocence, including Warren's identification of him, inconsistent witness statements, the possibility of a different suspect, and possible wrongdoing on the part of the Bucyrus Police Department.

{¶ 39} A trial court may address a petition for postconviction relief by granting the state's motion for summary judgment. R.C. 2953.21; *Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905, at paragraph two of the syllabus. Summary judgment is appropriate when, looking at the evidence as a whole, (1) no genuine issues of material fact remain to be litigated, (2) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party, and (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196. If any doubts exist, the

issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 40} Here, the trial court examined each of Keith's exhibits supporting his petition, concluding:

> The essence of Kevin Keith's successor Petition for Post Conviction Relief is that the newly discovered evidence demonstrated in the proffered exhibits supports a collection of *Brady* violations, and that these exhibits, as a whole, support a theory of innocence. On this issue, this court finds that reasonable minds can come to only one conclusion—that being unfavorable to [Keith] and favorable to the State. This court finds that, on the face of the record the evidence offered by [Keith] fails to demonstrate substantive grounds for relief. This court notes that, according to the United States Court of Appeals for the Sixth Circuit, [Keith] does not contend that he is actually innocent.

{¶ 41} As stated above, in light of the trial court's thorough consideration of Keith's exhibits and logical conclusions, we cannot find that the trial court's grant of summary judgment to the state was an abuse of discretion.

### 3. Prevention by trial court from meeting Civ.R. 56(C)

{¶ 42} Finally, Keith asserts that he has been prevented by the trial court from obtaining the factual information needed to meet the standards of Civ.R. 56(C). Essentially, Keith reiterates the argument of his first assignment of error that he should be entitled to conduct discovery.

{¶ 43} As discussed thoroughly in the first assignment of error, discovery is not available in the initial stages of a postconviction proceeding. See *Cunningham,* 2004-Ohio-5892, 2004 WL 2496525, ¶ 69. Thus, we find that Keith's claim is without merit, and the trial court's grant of summary judgment to the state was not an abuse of discretion.

{¶ 44} Accordingly, we overrule Keith's second assignment of error.

### Assignment of Error No. III

{¶ 45} In his third assignment of error, Keith asserts that the trial court's findings of fact and conclusions of law were arbitrary and inaccurate. Specifically, Keith asserts that the trial court inappropriately made its own identification of him as the perpetrator, relying upon contradicted facts, that the trial court wrongfully relied upon other courts' erroneous findings that Keith did not contend that he was innocent, and that the trial court inappropriately referred to other courts' determinations that there was overwhelming evidence of Keith's guilt, because the evidence in his second petition for postconviction relief was not before those courts. We disagree.

{¶ 46} First, Keith contends that the trial court wrongfully made its own identification of the perpetrator by comparing witness Nancy Smathers's description of the witness with Keith's appearance from its observation of him at the hearing and contends that the trial court relied upon contradicted facts in doing so. Although Keith does not cite any specific contradictory facts, we assume that Keith is referring to the witness descriptions contained in the first ground for relief in his postconviction petition. As stated in our discussion of Keith's second assignment of error, the trial court properly found that the witnesses' descriptions were not contradictory. Thus, Keith's contention that the trial court relied upon contradictory facts is erroneous. Additionally, we find no error in the trial court's comparison of a witness's description of Keith with his appearance at the hearing, nor does Keith cite any authority suggesting that such a comparison is erroneous.

{¶ 47} Second, Keith contends that the trial court erred by reiterating the statement of the United States Court of Appeals that "Keith does not claim that he is actually innocent." *Keith v. Mitchell* (2006), 455 F.3d at 675. Keith argues that he asserted his innocence during his colloquy with the trial judge and also through his "Motion to Challenge the State Court Factual Findings Which to Date have Been Prejudicially Incorrect, Unsubstantiated, and/or Outright Fictitious." However, courts have found that "a claim of actual innocence does not constitute a substantive ground for postconviction relief." *State v. Bound,* 5th Dist. No. 04–CA–8, 2004-Ohio-7097, 2004 WL 2988294, at ¶ 22, citing *State v. Watson* (1998), 126 Ohio App.3d 316, 323, 710 N.E.2d 340. Therefore, Keith's contention is meritless because even if he had asserted his innocence, that assertion fails to demonstrate a substantive ground for postconviction relief.

{¶ 48} Finally, Keith argues that the trial court should not have considered the opinion of the United States Court of Appeals that there was "overwhelming evidence" against him because the exhibits supporting his petition were not before that court. However, the trial court properly found that Keith's exhibits were not exculpatory. Additionally, the trial court was entitled to rely upon the overwhelming evidence set forth by the United States Court of Appeals, as well as the Supreme Court of Ohio, in making its determination that the newly asserted evidence was insufficient to call the jury's verdict into question. See *State v. Beuke* (1998), 130 Ohio App.3d 633, 637, 720 N.E.2d 962.

{¶ 49} Accordingly, we overrule Keith's third assignment of error.

{¶ 50} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

SHAW, P.J., and PRESTON, J., concur.