OPINION
{¶ 1} Defendant-appellant, Kevin Keith (hereinafter "Keith"), appeals the Crawford County Court of Common Pleas judgment denying his motion to file a delayed motion for new trial and Crim. R. 33(A)(6) motion for a new trial. For the reasons that follow, we affirm.
 {¶ 2} The relevant procedural history and facts of this case were set forth in this Court's prior opinion, State v. Keith,176 Ohio App.3d 260, 2008-Ohio-741, 891 N.E.2d 1191 as follows:[1]
 {¶ 3} In February 1994, the Crawford County Grand Jury indicted Keith on three counts of aggravated murder in violation of R.C. 2929.02, with capital-offense specifications, and on three counts of attempted aggravated murder in violation of R.C. 2903.01 and 2923.02, felonies of the first degree. The indictment arose from an incident during which Marichell D. Chatman, her seven-year-old daughter, Marchae D. Chatman, her cousins, Quanita M. Reeves and Quinton M. Reeves, her aunt, Linda Chatman, and Richard Warren were shot in Marichell's apartment. Marichell, Marchae, and Linda died as a result of the shooting, and Quanita, Quinton, and Richard were seriously injured. *Page 3 
 {¶ 4} In March 1994, Keith entered a plea of not guilty to all counts in the indictment. In May 1994, Keith filed a notice of alibi. Additionally, the case proceeded to a jury trial, at which the jury convicted Keith on all six counts of the indictment as charged and recommended the death penalty for the aggravated murder convictions.
 {¶ 5} In June 1994, the trial court sentenced Keith to death on the aggravated murder convictions and to a 7- to 25-year prison term on each of the attempted-aggravated-murder convictions, to be served consecutively. Subsequently, Keith appealed his conviction and sentence.
 {¶ 6} In April 1996, this court affirmed Keith's conviction and sentence, State v. Keith (Apr. 5, 1996), 3d Dist. No. 3-94-14,1996 WL 156710, and also issued a separate opinion regarding Keith's death sentence in conformity with R.C. 2929.05(A). State v. Keith (1996), 3d Dist. No. 3-94-14, 1996 WL 156716. Subsequently, Keith appealed to the Supreme Court of Ohio.
 {¶ 7} In September 1996, while his direct appeal was pending, Keith filed his first petition for postconviction relief in the trial court, alleging that he had been denied effective assistance of counsel and attaching numerous exhibits that were not part of the trial record.
 {¶ 8} In December 1996, Keith filed a supplemental petition for postconviction relief, in which he alleged ineffective assistance of counsel and requested an evidentiary hearing. *Page 4 
 {¶ 9} In October 1997, the Supreme Court of Ohio unanimously affirmed Keith's conviction. State v. Keith (1997), 79 Ohio St.3d 514,684 N.E.2d 47, reconsideration denied (1997), 80 Ohio St.3d 1450, 686 N.E.2d 276, certiorari denied (1998), 523 U.S. 1063, 118 S.Ct. 1393,140 L.Ed.2d 652.
 {¶ 10} In February 1998, the trial court denied Keith's first petition for postconviction relief, without granting an evidentiary hearing, in a 16-page opinion in which it addressed all of his arguments, as well as each of his attached exhibits, and concluded that his petition lacked merit.
 {¶ 11} In March 1998, Keith appealed the trial court's denial of his first petition for postconviction relief.
 {¶ 12} In August 1998, this court affirmed the trial court's denial of Keith's first petition for postconviction relief. State v. Keith (Aug. 19, 1998), 3d Dist. No. 3-98-05, 1998 WL 487044.
 {¶ 13} In September 1999, Keith filed a habeas corpus petition in the United States District Court, presenting eight grounds for relief.
 {¶ 14} In June 2001, the United States District Court denied Keith's petition for habeas corpus. Thereafter, Keith appealed the denial and sought a certificate of appealability.
 {¶ 15} In March 2003, the United States Court of Appeals granted a certificate of appealability on six of Keith's grounds for relief. *Page 5 
 {¶ 16} In August 2004, Keith filed a second petition for postconviction relief with the trial court, setting forth three grounds for relief: (1) that the trial prosecutors did not timely provide defense counsel with all relevant exculpatory evidence, (2) that new information received after the trial indicated that two persons were involved in the homicides and that there was another possible suspect, and (3) that the cumulative effects of these errors deprived him of fundamental fairness, resulting in his conviction and sentence being void or voidable. Keith submitted the following seven "exhibits" as documentary evidence in support of his petition:
 Exhibits 1 and 2. "[T]he prosecutor had actual or constructive possession of police reports that memorialized that [sic] at least one eyewitness report that merely described a "pretty big guy with a mask". [Exhibit 1] This eyewitness makes a second statement after talking with Captain Michael Corwin wherein he claims that the person was Kevin Keith. [Exhibit 2] The first statement was never turned over to the defense." [By implication, the second statement was turned over to the defense.]
 Exhibit 3. "The prosecutor had actual or constructive knowledge that this eyewitness also stated that Kevin Keith was too big to be the shooter. [Exhibit 3] This information was not turned over to the defense."
 Exhibit 4. "The prosecutor presented John Foor as a witness in rebuttal. Foor testified that Richard Warren wrote the name "Kevin" on notepaper, but that he did not keep that paper. (T. 778-780) No notes were turned over to the defense. Six pages of notes actually existed. [Exhibit 4] These notes reveal the name "Kevin" in what clearly appears to be different handwriting from the rest of the writing, which obviously is *Page 6 Richard Warren's. The notes also reveal the name "Damon"-another person involved in drug sales in the area."
 Exhibit 5. "The prosecutor had actual or constructive knowledge that Rodney Melton was under indictment from Crawford County for drug sales occurring on August 31, 1993. [Exhibit 5] The apparent informant in that case was Rudell Chatman. Chatman was the informant in a pending indictment Kevin Keith faced for drug sales alleged to have occurred on August 31, 1993. The State claimed the motive for the killings was the fact that Rudell Chatman informed on Keith. The prosecutor did not turn over any information regarding the fact that Rudell Chatman had also informed on Rodney Melton."
 Exhibit 6. "New information received after the trial indicates that two persons were involved in the homicides."
 Exhibit 7. "New information also indicates that the lead investigator helped Rodney Melton, a suspect in the crime, with clearing up some matter involving Melton living at the scene of the crime. No information was provided to the defense about the ongoing relationship between the lead investigator and Rodney Melton."
Judgment entry at 17-18. Keith also requested that he be permitted to conduct discovery, that he be permitted to amend his postconviction petition upon completion of discovery, that his capital convictions and sentences be vacated and that an evidentiary hearing be conducted on the matter.
 {¶ 17} In September 2004, the state moved for summary judgment against Keith's second petition for postconviction relief on the basis that all issues presented were barred by res judciata and because the petition was untimely pursuant to R.C. 2953.21. *Page 7 
 {¶ 18} In July 2006, the United States Court of Appeals denied Keith's writ of habeas corpus. Keith v. Mitchell (C.A.6, 2006), 455 F.3d 662, petition for rehearing denied en banc (C.A.6, 2006), 466 F.3d 540, certiorari denied (2007), ___ U.S. ___, 127 S.Ct. 1881, 167 L.Ed.2d 369.
 {¶ 19} In February 2007, the trial court granted summary judgment in favor of the state and against Keith on his second petition for postconviction relief[2] and, alternatively, dismissed Keith's petition in a 35-page opinion, without permitting discovery or an evidentiary hearing. In doing so, the trial court stated:
 The essence of Kevin Keith's successor Petition for Post Conviction Relief is that the newly discovered evidence demonstrated in the proffered exhibits supports a collection of Brady violations, and that these exhibits, as a whole, support a theory of innocence. On this issue, this court finds that reasonable minds can come to only one conclusion-that being unfavorable to [Keith] and favorable to the State. This court finds that, on the face of the record the evidence offered by [Keith] fails to demonstrate substantive grounds for relief. This court notes that, according to the United States Court of Appeals for the Sixth Circuit, [Keith] does not contend that he is actually innocent.
 {¶ 20} In making this determination, the trial court cited "overwhelming evidence" against Keith, including the following:
 1. Approximately 8 hours after the shootings, Richard Warren, while recovering from surgery, wrote the name "Kevin" on a piece of paper as the name of his assailant. *Page 8 
 2. Later in the day, Warren selected Kevin Keith from a photo array of six individuals.
 3. Investigators recovered a total of twenty-four cartridge casings from the crime scene area, which had all been fired from the same gun.
 4. On the night of the murders, [Keith] picked up his girlfriend, from work at the entrance to the General Electric plant where another matched casing was found.
 5. Nancy Smathers, a resident of the Bucyrus Estates, heard popping noises, looked outside her window on the night of the murders, and observed a large stocky man making his escape, whom she was able to identify six weeks later as Kevin Keith, from a television news story depicting [Keith].
 6. The man Smathers identified jumped into a light-colored, medium-sized car, a description consistent with the automobile Kevin Keith was known to have had access.
 7. Smathers witnessed a number of events: the car slid into a snow bank; the perpetrator got out to rock the car, but the dome light did not operate when the driver's door opened; the light for the license plate was out; the perpetrator was able to free the vehicle from the snow bank.
 8. At the snow bank where Smathers witnessed the getaway car slide, investigators made a cast of the tire tread and of the indentation in the snow bank made by the car's front license plate number-"043."
 9. The indentation from the license plate matched the last three numbers of a 1982 Oldsmobile Omega seized from Melanie Davison shortly after she visited [Keith] in jail, under the pseudonym "Sherry Brown" a few weeks after the murders.
 10. The Oldsmobile was registered to Alton Davison, Melanie's grandfather, and was also regularly used by Melanie. Alton Davison had put four new tires on the Omega six months prior *Page 9 to the murders. He estimated that by February 1994, the new tires had been driven less than 3,000 miles without any problems or need for replacement.
 11. The cast taken of the tire tread at the crime scene did not match tires found on the Oldsmobile Omega one month later, but the cast did match the tread of the tires purchased by Alton Davison-this, based upon the tire brochures.
 12. The tires found on the Oldsmobile Omega after the murders had been manufactured but a month before the murders.
 13. It will be recalled that the perpetrator put a gun to Marichell's head, complaining bitterly about Marichell's brother "ratting on people." Rudel Chatman, the victim's brother was a police informant in a drug investigation involving Kevin Keith. And the month prior to the murders, Keith was charged with several counts of aggravated drug trafficking.
 14. The description of the vehicle by Nancy Smathers-a light colored, medium-sized car-generally fit the description of the Oldsmobile Omega owned by Alton Davison and frequently driven by his granddaughter Melanie, one of the girlfriends of Kevin Keith.
 15. The description of the perpetrator by Nancy Smathers-a large, stocky black man-generally fits and continues to fit (from this court's observation of [Keith] at the hearing) [Keith].
 16. It will be recalled that after drinking a glass of water through a pulled-up portion of a turtleneck sweater, the perpetrator pulled a nine-millimeter handgun from a plastic bag that he was carrying. Kevin Keith was seen earlier in the day in the neighborhood by a neighbor while he (Keith) was carrying a bag.
On March 15, 2007, Keith appealed the trial court's denial of his second post-conviction motion, which this Court affirmed on February 25, 2008. Keith, 2008-Ohio-741. *Page 10 
 {¶ 21} On August 1, 2007, while his appeal to this Court was pending, Keith filed a motion to file a delayed motion for new trial and a motion for a new trial.
 {¶ 22} On August 3, 2007, Keith filed a motion to re-open pursuant to App. R. 26(B) with this Court, which we denied. The Ohio Supreme Court affirmed our judgment on August 7, 2008. State v. Keith,119 Ohio St.3d 161, 2008-Ohio-3866, 892 N.E.2d 912.
 {¶ 23} On March 28, 2008, Keith filed a motion for an evidentiary hearing for his motion for new trial. On April 10, 2008, Keith filed an appeal of this Court's February 25, 2008 decision with the Ohio Supreme Court.
 {¶ 24} On July 2, 2008, the trial court denied Keith's motion to file a delayed motion for new trial, motion for evidentiary hearing, motion for new trial, and any and all ancillary motions.
 {¶ 25} On July 7, 2008, Keith filed an appeal of the trial court's denial of his motions with this Court. Keith now appeals this judgment asserting three assignments of error for review. We have elected to address these assignments of error collectively but out of the order listed in Keith's brief.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED IN APPLYING THE DOCTRINE OF RES JUDICATA TO APPELLANT'S CLAIMS. *Page 11 
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED IN EVALUATING AND DENYING APPELLANT'S MOTION FOR NEW TRIAL UNDER THE USUAL STANDARDS FOR NEW TRIAL, WHEN THE NEWLY DISCOVERED EVIDENCE WAS AVAILABLE TO THE PROSECUTION AND NOT SUBMITTED TO THE DEFENSE.
 ASSIGNMENT OF ERROR NO. III THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW WERE ARBITRARY AND INACCURATE.
 {¶ 26} In his second assignment of error, Keith argues that the trial court erred in finding that his claims were barred by the doctrine of res judicata. We disagree.
 {¶ 27} Keith identified four allegedly new pieces of evidence in support of his Crim. R. 33(A)(6) motion for a new trial: (1) on January 31, 1994, Rodney Melton, a known drug dealer, told a confidential informant "that he had been paid $15,000 to cripple `the man' who was responsible for the raids in Crestline, Ohio last week[]"; (2) the victim, Richard Warren, never told nurse "Amy Gimmets" that the assailant's name was "Kevin" because no "Amy Gimmets" ever worked for the hospital; (3) eyewitness Nancy Smathers' testimony indicates that the getaway car was "white, cream, light yellow" in color, which matches Melton's car, not the vehicle Keith allegedly drove; and (4) Melton's car tires were never *Page 12 
analyzed to determine whether they had a similar tread design to that of the getaway car.
 {¶ 28} With regard to Keith's contentions concerning Smathers' testimony, this could have been raised as an error on direct appeal or in his postconviction petition. Smathers testified at trial and her testimony appears in the transcript. As such, any error predicated upon this testimony is now res judicata. State v. Perry (1967),10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus. Furthermore, this Court notes that Melton testified at trial that he owned a "light tannish, cream" 1979 Chevy Impala; and therefore, this evidence was before the jury and was not new evidence as Keith alleges. (Jan. 17, 1995 Tr. Vol. IV at 675). As to Melton's tire tread matching that of the getaway car, this is an issue that could have been explored by defense counsel at trial. The State certainly would not have presented this evidence in a prosecution against Keith. Furthermore, this too could have been raised as an issue on direct appeal or, at the latest, in hissecond post-conviction petition and is now, therefore, res judicata.Perry, 10 Ohio St.2d 175, paragraph nine of the syllabus.
 {¶ 29} Keith's first and second alleged new pieces of evidence are similarly barred under the doctrine of res judicata. In his second post-conviction petition, Keith argued that the prosecution knew that Melton had the same motive to commit the crime as he did but failed to disclose this information. (Doc. No. 116). Keith now claims to have more information implicating Melton and, thereby, *Page 13 
exonerating him. The trial court denied Keith's post-conviction petition, and this Court affirmed. Accordingly, this issue has been argued before and is now barred. Perry, 10 Ohio St.2d 175, paragraph nine of the syllabus.
 {¶ 30} Keith also alleges that hospital records reveal that no nurse by the name of "Amy Gimmets" has ever worked at the hospital where the victim was treated. Accordingly, Keith argues that Captain Stanley must have lied when he testified that Gimmets told him that the victim stated "Kevin" was the assailant. Keith filed a motion to suppress the victim's in-hospital identification, and the fact that no "Amy Gimmets" worked at the hospital could have been discovered during that time. Furthermore, the nurse's identity could have been discovered during the course of the trial and used as impeachment, or, at the latest, it certainly could have been raised on direct appeal or in one of Keith's post-conviction petitions. Under these circumstances, we find this issue barred as well.Perry, 10 Ohio St.2d 175, paragraph nine of the syllabus.
 {¶ 31} For all these reasons, we find that the trial court did not err in concluding that Keith's arguments were barred by the doctrine of res judicata.
 {¶ 32} In his first assignment of error, Keith argues that the trial court erred by failing to utilize the standards under Brady v.Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 and instead used the traditional Crim. R. 33(A)(6) standard. Even if we were to agree with Keith's argument, he has failed to *Page 14 
establish a Brady violation, because he has failed to show that the evidence was material.
 {¶ 33} "The United States Supreme Court has held that `the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."' State v. Griffin, 3d Dist. No. 1-03-31, 2004-Ohio-287,¶ 9, quoting Brady, 373 U.S. at 87. However, Brady does not apply "`unless the evidence is material to mitigation, exculpation or impeachment.'" Griffin, 2004-Ohio-287, at ¶ 9, quoting State v.Keene (1998), 81 Ohio St.3d 646, 693 N.E.2d 246, citing Calley v.Callaway (C.A. 5, 1975), 519 F.2d 184, 221. "`[E]vidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Griffin, 2004-Ohio-287, at ¶ 9, quotingState v. Yarbrough (Apr. 30, 2001), 3d Dist. No. 17-2000-10, at *8.
 {¶ 34} The trial court found, and we agree, that there is no reasonable probability that the aforementioned evidence, if disclosed, would have changed the outcome. Much of the evidence was already presented at trial, if not directly at least inferentially. Furthermore, a jury of twelve citizens found the evidence presented sufficient to convict Keith, and this verdict has stood the test of time and an exhaustive series of both state and federal appeals. This case was before this Court as recently as February 25, 2008 on Keith's second post-conviction petition. *Page 15 
We were not persuaded then, nor are we now, that Keith has suffered prejudice sufficient to merit a reversal of the trial court's judgment.
 {¶ 35} Finally, in his third assignment of error, Keith argues that the trial court's judgment was arbitrary and inaccurate. We disagree. Although the trial court made some apparent typographical errors, this does not mean that its decision was "arbitrary" as Keith argues. This Court has reviewed the trial court's judgment entry and finds that it is not arbitrary. This Court also agrees with the trial court's judgment that Keith's claims are barred by the doctrine of res judicata, and, even if not barred, would not have changed the trial's outcome.
 {¶ 36} Keith's first, second, and third assignments of error are overruled.
 {¶ 37} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 WILLAMOWSKI and ROGERS, JJ., concur.
[1] The Court notes that the recitation of facts and procedure was taken word-for-word from our prior referenced opinion, with the exception that additional facts and procedure were added as necessary for this opinion.
[2] The lengthy delay between Keith's second petition for postconviction relief and the trial court's judgment entry resulted from a stipulation between Keith and the state that the petition should be suspended pending a decision by the United States Court of Appeals on the writ of habeas corpus. *Page 1