[Cite as *State v. Workman*, 2017-Ohio-7364.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

TIMOTHY SCOTT WORKMAN,

    DEFENDANT-APPELLANT.

CASE NO. 2-17-12

O P I N I O N

Appeal from Auglaize County Common Pleas Court
Criminal Division
Trial Court No. 2014-CR-75

**Judgment Affirmed**

**Date of Decision: August 28, 2017**

APPEARANCES:

    *Timothy Scott Workman*, Appellant

    *R. Andrew Augsburger* for Appellee

**WILLAMOWSKI, J.**

{¶1} Although originally placed on our accelerated calendar, we have elected pursuant to Loc.R. 12(5) to issue a full opinion in lieu of a summary judgment entry.

{¶2} Defendant-appellant Timothy S. Workman ("Workman") was convicted of thirty-nine counts of illegal use of a minor in nudity-oriented material in violation of R.C. 2907.323(A)(1), thirty-nine counts of illegal use of a minor in nudity-oriented material in violation of R.C. 2907.323(A)(3), and one count of tampering with evidence in violation of R.C. 2921.12(A)(1). In this appeal, he challenges the decision of the Court of Common Pleas of Auglaize County for (1) dismissing his successive petition for postconviction relief and (2) failing to hold an evidentiary hearing in response to his successive petition for postconviction relief. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶3} Two female minors accused Workman of taking nude photographs of them in a hotel room in Wapakoneta, Ohio, during the months of March and July of 2013. Tr. 382. A police detective set up a sting operation by posing as one of the minor girls and extending an offer to have another photo shoot at an area hotel. Doc. 103. After Workman registered at the hotel, the police apprehended him. *Id.* At the time of his arrest, Workman's cell phone was seized from his vehicle. Tr. 421. Further investigation of Workman's vehicle yielded two secure digital memory

-2-

cards. Tr. 460-461. These memory cards contained nude pictures of the two minors who had accused Workman. Tr. 479-480.

{¶4} Both of the female minors who accused Workman testified at his trial and identified Workman as the person who took the nude pictures of them. Tr. 310, 342, 346, 375. Both girls knew Workman independently of the photo shoots that he had hosted. Tr. 199-200, 298-299. One of these girls had known Workman for four to five years before their interactions in the photo shoots and, thus, for some time before she had identified him at trial. Tr. 298-299. The other girl had known Workman for a shorter period of time through his work at a local gym. Tr. 199-200. Further, the girls also identified the photographs he took of them and text messages about the photo shoots. Tr. 212, 225-228, 231-240, 308, 310, 318-336, 344-345. The photographs from the memory card were admitted into evidence as were copies of the text messages that were used to schedule the nude photo shoots in 2013. Ex. 95, 104.

{¶5} On October 3, 2014, Workman was found guilty of thirty-nine counts of illegal use of a minor in nudity-oriented material in violation of R.C. 2907.323(A)(1), thirty-nine counts of illegal use of a minor in nudity-oriented material in violation of R.C. 2907.323(A)(3), and one count of tampering with evidence in violation of R.C. 2921.12(A)(1). Docs. 202-280. On October 27, 2014, Workman submitted a motion for a new trial on the grounds that Workman received ineffective assistance of counsel. Doc. 293. The motion for a new trial was denied.

Doc. 299. On January 12, 2015, Workman filed a motion requesting a *Franks* hearing and then subsequently filed two motions that amended the motion requesting a *Franks* hearing on January 21, 2015, and January 29, 2015. Docs. 347, 357, 362. These motions alleged that the warrants issued in this case were based on false statements made by police. Doc. 347. The trial court denied these motions on February 15, 2015. Doc. 365.[1]

**{¶6}** On February 4, 2015, he was sentenced to forty years in prison. Sentencing Hearing Tr. 42. Doc. 368. Workman filed a direct appeal of his conviction on March 9, 2015. Doc. 381. He challenged the inventory search of his utility vehicle and his conviction for tampering with evidence. Doc. 424. In this appeal, Workman did not raise the issues presented in the action now before this Court. *See State v. Workman*, 2015-Ohio-5049, 52 N.E.3d 286, ¶ 8 (3d Dist.). After hearing his appeal, this Court affirmed the decision of the trial court. *Id*. The Supreme Court of Ohio did not accept his appeal for review of this Court's decision. *See State v. Workman*, 145 Ohio St.3d 1445, 2016-Ohio-1596, 48 N.E.3d 584.

**{¶7}** On April 8, 2015, Workman submitted another motion requesting a *Franks* hearing with the trial court that challenged the warrants in this case, claiming the warrants were issued on the basis of false statements. Doc. 394. This motion was denied on April 10, 2015. Docs. 402. Workman did not appeal the denial of

---

[1] These motions were stricken and denied because a friend of Workman was signing and submitting the motions on Workman's behalf without a power of attorney document. Doc. 365. The trial court, in denying these motions, stated that it did not recognize hybrid representation. *Id*.

this motion. On September 16, 2015, Workman filed a petition for postconviction relief. Doc. 414. The arguments in this petition raised ineffective assistance of counsel claims and questioned whether the State released all relevant evidence to the Defense. *Id*. This motion for postconviction relief was denied by the trial court on February 11, 2016. Doc. 441. On February 16, 2016, Workman filed another motion requesting a *Franks* hearing. Doc. 446. This motion alleged that the warrants issued in this case were based on false statements made by the police. *Id*. The trial court denied this motion on February 19, 2016. Docs. 448.

{¶8} On March 4, 2016, Workman appealed the decision of the trial court to deny his February 11, 2016 petition for postconviction relief. Docs. 463, 467. On March 7, 2016, Workman filed a notice of appeal, challenging the trial court's decision to deny his February 16, 2016 motion requesting a *Franks* hearing. Docs. 469, 479. On July 25, 2016, this Court affirmed the trial court's decision to deny both of these motions. Doc. 502. On August 11, 2016, Workman filed a motion for a new trial, claiming "there was accident or surprise, in that the Defendant did not expect the State to produce or use fraudulent evidence against this defendant." Doc. 504. On August 12, 2016, Workman submitted a motion for a new trial claiming that "the State knowingly and intentionally presented fraudulent evidence against this defendant * * *." Doc. 512. The trial court denied these motions on October 27, 2016. Doc. 530. Workman did not file an appeal in response to this decision by the trial court.

{¶9} On December 12, 2016, Workman filed a motion for a new trial. Doc. 533. This motion alleged that newly discovered evidence had surfaced and requested an evidentiary hearing. Doc. 533. The newly discovered evidence that this motion purportedly identified was a photograph that was admitted as an exhibit to trial. *Id.* Ex. 104-3. This photo captures a fully clothed teenage girl sitting on a counter in a hotel room. Ex. 104-3. The reflection of the person taking the picture can be partially seen in the mirror behind the girl. *Id.* However, the flash from the camera obscures the face of the person taking the picture, leaving only portions of his right arm and abdomen visible. *Id.* Workman's motion for a new trial was accompanied by a letter from an alleged expert. Doc. 533. The alleged expert claimed that the person taking the picture had a tattoo on his arm. *Id.* Workman asserted that this demonstrated that he was not the person who took the pictures as he did not have a tattoo on his right arm. *Id.*

{¶10} On January 23, 2017, Workman filed an amendment to his December 12, 2016 motion for a new trial. Doc. 544. This document claimed that the photograph that was admitted to trial as State's Exhibit 104-3 was taken on November 5, 2013, which was after Workman was taken into custody on September 30, 2013. *Id.* Workman argued that this was new evidence that showed he was not guilty of the crime for which he was convicted. *Id.* Affixed to this motion was a screenshot and a few handwritten notes scrawled on letterhead from PC Solutions. *Id.* The screenshot shows the properties of the computer file which contained the

photograph that is State's Exhibit 104-3. The properties—or file attributes—show that this file was created on November 5, 2013. *Id.* The page with handwritten notes records the file attributes that were displayed in Windows Photo Viewer. *Id.* The name of the person who opened this computer file for Workman at PC Solutions is listed, but no expert credentials or further identification is included anywhere in this motion. *Id.*

{¶11} In response to these pleadings, the State filed an objection to defendant's motion for a new trial on February 17, 2017, arguing that neither document disclosed any new evidence but only asserted "new interpretations on old evidence." Doc. 548. The State first addressed the information alleging that the photographer in State's Exhibit 104-3 had a tattoo on his arm. The State pointed out that Workman's own expert, Patrick Mains, testified at trial that he could not conclude that the person taking the photograph in State's Exhibit 104-3 had a tattoo on his arm. *Id.* Rather, Mains testified that this dark area on the photographer's arm could be only a shadow. *Id.* Trial Tr. 900, 902-903.

{¶12} The State then addressed the allegations that the photograph that was admitted as State's Exhibit 104-3 was taken after Workman had been taken into custody. Doc. 548. On this issue, the State explained that the file attributes, which were depicted in the screenshots submitted by Workman, were the dates on which the digital files were created during the course of the investigation not the dates on which the pictures were taken. *Id.* The dates presented under the file attributes

represented the creation of copies of the original images found on Workman's phone. *Id.* The metadata that recorded the time at which these pictures were taken had been removed from the picture files prior to Workman's apprehension. *Id.* Since the metadata had been removed, the nude pictures and the photograph that was admitted at trial as State's Exhibit 104-3 only contained the date on which they were modified, which was March 14, 2013. *Id.* Trial Tr. 644-646. The State argued that this modification date shows that the pictures were on Workman's phone on March 14, 2013, and were, thus, on his phone prior to his apprehension. Doc. 548. On the basis of these arguments, the State urged the trial court to deny Workman's petition. *Id.*

{¶13} On February 21, 2017, the trial court denied Workman's motion for a new trial. Doc. 549. Workman did not file an appeal of the denial of this motion. On April 10, 2017, Workman submitted another petition for postconviction relief to the trial court that largely reiterated the arguments of the December 12, 2016 motion for a new trial and the January 23, 2017 amendment to the motion for a new trial. Docs. 533, 553. On April 25, 2017, the trial court denied Workman's successive petition for postconviction relief on the grounds that res judicata barred consideration of these issues. Doc. 558. On May 1, 2017, Workman filed a notice of appeal, challenging the trial court's decision to deny his April 10, 2017 successive petition for postconviction relief. Doc. 561. In this appeal, Workman raises the following two assignments of error.

**First Assignment of Error**

**The trial court abused its discretion when it dismissed Workman's successive post-conviction petition when the record showed that (1) Workman was unavoidably prevented from discovery of the facts upon which he relies, and (2) but for the constitutional error in his trial, no reasonable factfinder would have found Workman guilty.**

**Second Assignment of Error**

**The trial court abused its discretion when it failed to hold an evidentiary hearing on Workman's successive post-conviction petition when the full balance of the evidence dehors the record, set forth sufficient operative facts that demonstrate a substantial ground for relief.**

Since the subject matter of these two assignments of error is essentially the same, we will address both of these assignments of error together even though they were argued under different headings in Workman's brief.

*First and Second Assignments of Error*

{¶14} In his first assignment of error, Workman argues that the trial court erred in dismissing his successive petition for postconviction relief because his case meets the requirements of R.C. 2953.23. Specifically, he points to a photograph, which was admitted at trial as State's Exhibit 104-3. This picture captures a fully clothed girl sitting on a countertop in a hotel room. The reflection of the person who is taking the picture can somewhat be seen in the mirror behind the girl. However, the face of this photographer is obstructed by the flash, leaving only portions of his abdomen and right arm somewhat visible. Workman claims that two

new analyses of this image demonstrate that he was not the photographer who was captured in this image.

{¶15} The first analysis alleges that the photographer captured in this image had a tattoo on his right arm. The second analysis claims that the electronic files of these pictures show that this photograph was taken after he had been apprehended by the police. Since this is not Workman's first petition for postconviction relief, he must establish that this successive petition falls within the exception set forth in R.C. 2953.23(A)(1). To this end, he first argues that he was unavoidably prevented from discovering this evidence because he was financially unable to hire a forensic expert due to his indigent status. He then argues that he has clearly and convincingly demonstrated that his first trial contained a constitutional error as he would have been found innocent had this evidence been available during his trial.

{¶16} On the basis of these arguments, Workman argues, under his second assignment of error, that the trial court erred by refusing to hold an evidentiary hearing on his successive petition for postconviction release. He further argues that the facts contained in the record combined with this new information provides substantial grounds for relief. He argues that the facts he has pointed to in this appeal are sufficient to warrant an evidentiary hearing and that the trial court abused its discretion in failing to hold such a hearing. We do not find these arguments to be persuasive.

*Legal Standard*

**{¶17}** "R.C. 2953.21, Ohio's postconviction-relief statute, provides 'a remedy for a collateral attack upon judgments of conviction claimed to be void or voidable under the United States or the Ohio Constitution.'" *State v. Keith*, 176 Ohio App.3d 260, 2008-Ohio-741, 891 N.E.2d 1191, ¶ 24 (3d Dist.), quoting *State v. Scott-Hoover*, 3d Dist. Crawford No. 3-04-11, 2004-Ohio-4804, ¶ 10. *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905, 909 (1999) (holding "a postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment."). "Postconviction review is not a constitutional right, but is a collateral civil attack on a judgment that is governed solely by R.C. 2953.21." *Id.* at ¶ 26. *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67, 76 (1994). "A trial court lacks jurisdiction to entertain an untimely or successive petition for postconviction relief unless the petitioner establishes that one of the exceptions in R.C. 2953.23(A) applies." *State v. Cunningham*, 2016-Ohio-3106, 65 N.E.3d 307, ¶ 13 (3d Dist.), quoting *State v. Chavis*, 10th Dist. Franklin No. 15AP-557, 2015-Ohio-5549, ¶ 14. *State v. Greathouse*, 2d Dist. Montgomery No. 24084, 2011-Ohio-4012, ¶ 12; *State v. Collins*, 4th Dist. Athens No. 06CA40, 2007-Ohio-3558, ¶ 11; *State v. Christian*, 7th Dist. Mahoning No. 06 MA 167, 2007-Ohio-3336, ¶ 9; *State v. Kent*, 12th Dist. Preble No. CA2013-05-003, 2013-Ohio-5090, ¶ 10.

**{¶18}** R.C. 2953.23(A)(1) reads as follows:

**(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless * * *:**

**(1) Both of the following apply:**

**(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.**

**(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.**

R.C. 2953.23(A)(1). Thus, unless the defendant alleges a new federal or state right has been recognized, the defendant must prove (1) that he was unavoidably prevented from discovery of facts upon which his successive petition for postconviction relief rests and (2) that he would not have been convicted at trial by a reasonable factfinder but for the constitutional error.

**{¶19}** "A defendant is "unavoidably prevented" from the discovery of facts if he had no knowledge of the existence of those facts and could not have, in the

exercise of reasonable diligence, learned of their existence within the time specified for filing his petition for postconviction relief." *Cunningham, supra*, at ¶ 19, citing *State v. Holnapy*, 11th Dist. Lake No. 2013–L–002, 2013-Ohio-4307, ¶ 32. "And the 'facts' contemplated by R.C. 2953.23(A)(1)(a) are the historical facts of the case, which occurred up to and including the time of conviction." *Id*., quoting *State v. Ruark*, 10th Dist. Franklin No. 15AP-142, 2015-Ohio-3206, ¶ 11.

{¶20} "[A] postconviction-relief hearing is not merited for claims that were raised or could have been raised on direct appeal, because those claims are barred by res judicata." *Keith, supra,* at ¶ 24, quoting *State v. Yarbrough*, 3d Dist. Shelby No. 17-2000-10, 2001 WL 454683 (Apr. 30, 2001). *State v. Reynolds*, 79 Ohio St.3d 158, 161, 679 N.E.2d 1131, 1133 (1997) (holding "that, pursuant to res judicata, a defendant cannot raise an issue in a motion for postconviction relief if he or she could have raised the issue on direct appeal."). "[A] trial court is not required to hold a hearing on a petitioner's motion for postconviction relief if the petition, files and records of the case show that the petitioner is not entitled to relief." *State v. Schoonover*, 3d Dist. Allen No. 1-97-54, 1997 WL 746387, *2 (Dec. 4, 1997).

> **[A] trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence.**

*State v. Gondor*, 112 Ohio App.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. "An abuse of discretion is more than an error of judgment; rather, it implies that the trial

court's decision was unreasonable, arbitrary, or capricious." *Schroeder v. Niese*, 2016-Ohio-8397, 78 N.E.3d 339, ¶ 7 (3d Dist.), quoting *Heilman v. Heilman*, 3d Dist. Hardin No. 6-12-08, ¶ 14.

*Legal Analysis*

**{¶21}** In this case, the defendant must show (1) that he was unavoidably prevented from discovering the facts upon which his successive petition for postconviction relief rests at the time of his first petition for postconviction relief and (2) that he would not have been found guilty by a reasonable factfinder but for the constitutional error at his trial. As to the first prong of this test, the defendant has not directed our attention to a new fact. Rather, Workman has pointed us to a photograph that was admitted at trial at the request of the State and the Defense. Ex. 104-3. Ex. RRA. Workman then uses this photograph to reargue factual issues that were already considered and resolved by the finders of fact at the conclusion of his trial. Trial Tr. 644-646, 667, 900, 902-903.

**{¶22}** In the first analysis that appellant points to in his brief, Workman only directs us to a new opinion from an alleged new expert. While the alleged expert did sign an affidavit stating his findings, Workman did not submit a curriculum vitae for this alleged expert. Docs. 533, 553. In this affidavit, this alleged expert claims that the photographer in State's Exhibit 104-3 had a tattoo on his right arm. While Workman presents this as new evidence, he had access to the exact photo that this alleged expert analyzed before, during, and immediately after trial. Thus, while

Workman may not have known that this particular opinion could have been rendered at the time he submitted his first petition for postconviction relief—which was filed on September 16, 2015—he had actual knowledge of the facts and the evidence—the photograph admitted at trial—that forms the basis of his successive petition. Ex. 104-3. The letter from the alleged expert did not disclose the discovery of a new fact but merely renders a different opinion—an opinion that directly contradicts the statements of the expert witness who the Defense called to testify at trial. Trial Tr. 900, 902-903.

{¶23} Workman argues that he was unavoidably prevented, by his indigent status, from discovering this purportedly new fact at the time of his first petition for postconviction relief. However, Workman did have an expert examine the photograph at the time of his trial. Trial Tr. 898-905. The expert hired by the Defense testified at trial as to the issue of whether the photographer in State's Exhibit 104-3 had a tattoo on his right arm. Ex. RRA. Ex. 104-3. Trial Tr. 900, 902-903. Workman's expert testified that he could not determine that a tattoo was present on the photographer's arm and that the dark area on the photographer's arm in the picture may only be a shadow. Trial Tr. 900, 902-903. Thus, Workman is attempting to raise a factual issue that was already considered and resolved at trial. Discovering an expert who is willing to provide a more favorable opinion to the Defense is not the same as discovering new facts.

{¶24} In the second analysis, Workman directs our attention to the same photograph and attempts to establish that he was not the photographer captured in State's Exhibit 104-3. He claims that a forensic expert was able to determine that this photograph was taken after the he had been apprehended by the police. Workman submitted a page-long, handwritten document and a screenshot of the properties of the digital file containing State's Exhibit 104-3. Doc. 553. This document contains the alleged expert's name but does not list any qualifications, any experience, or the job title of this alleged expert. Further, this filing did not include a curriculum vitae for this alleged expert. *Id.*

{¶25} This document then lists the name, size, dimensions, and local source of the computer file that contained State's Exhibit 104-3. *Id.* The document then states that this "file was taken Tuesday, November 5, 2013, 2:28 p.m." *Id.* However, this document does not disclose the method of analysis, contains no explanation of the alleged expert's findings, and cannot be understood without first reading the argument contained in the appellant's brief. *Id.* Further, no affidavit from this alleged expert was submitted with this filing. *Id.* Ultimately, the argument regarding the time at which the picture was taken is not a new fact or new evidence that Workman was unavoidably prevented from discovering but is rather an unsubstantiated assertion.

{¶26} This second analysis also addresses a factual issue that was considered at trial. The photograph at issue in this appeal was admitted at trial as State's Exhibit

104-3. The State had an expert who testified that the metadata had been removed from this image prior to Workman's apprehension. Trial Tr. 645. The expert stated that the exact time at which this picture was taken could not be pinpointed without the metadata. *Id*. at 646. The expert, however, was able to examine the file properties of the pictures on Workman's memory card. *Id*. at 643. The file properties recorded the moment that these pictures were modified on Workman's memory card on March 14, 2013 at 8:40 p.m. However, these file properties do not contain information about these pictures prior to the moment that they were saved onto Workman's memory card. *Id*. at 646. Without the metadata, the State's expert could only conclude that the pictures admitted at trial were taken prior to March 14, 2013 and were on his memory card on that date. *Id*. Thus, the prosecution presented evidence that the photograph, admitted as State's Exhibit 104-3, was on Workman's memory card prior to his apprehension.

{¶27} On appeal, Workman claims that he has new evidence that shows the photograph, admitted as State's Exhibit 104-3, was taken on November 5, 2013, which was after he had been taken into custody. However, this alleged expert could not have pinpointed the exact date that this photo was taken for two key reasons. First, the metadata had been removed prior to Workman's apprehension, making it impossible to determine exactly when this photograph was taken. Second, the screenshot submitted with Workman's petition shows that this alleged expert was examining the file properties of the photograph that was admitted as State's Exhibit

104-3. Doc. 548. The date that is shown on the file properties in this screenshot is not the date on which this photograph was taken. Trial Tr. 661. Rather, these file properties only show when the digital file that was given to Workman during discovery was created.[2] Doc. 548.[3]

{¶28} Both of these issues were discussed at trial. On cross examination, the Defense asked the State's expert what information could be gleaned about this photograph from the file properties in Windows Photo Viewer. *Id*. at 661. The expert explained that the file properties in Windows Photo Viewer did not contain metadata and could not be used to determine when this photograph was taken. *Id*. Rather, the file properties in Windows Photo Viewer only show the creation date of that particular digital file. *Id*. Further, the expert said that even if the metadata had not been removed, the information contained in metadata could not have been viewed by a user in Windows Photo Viewer. *Id*. The screenshot submitted with Workman's successive petition for postconviction relief shows only the properties of the digital file in Windows. At trial, the State's expert was questioned on cross examination as to whether these properties could be used to determine when the

---

[2] The top of the screenshot shows that the digital file name is "Images sent as discovery." Doc. 548.

[3] This information does not conflict with the information given at trial regarding the March 14, 2013 modification date that shows Workman had these pictures on his phone prior to his apprehension. The State's expert examined the images on Workman's memory card. Tr. 643-644. The file properties of these images recorded when the digital files were modified on his memory card. Tr. 643-645, 646. When the police made a copy of these images to give to Workman during discovery, the file properties of the digital file given to Workman would record the moment at which that particular file—the copy—was created by the State. Doc. 548. The fact that the file properties in the alleged expert's screenshot show a date of November 5, 2013, does not mean that this photograph was taken on November 5, 2013. *Id*. (Rather, it would mean that the digital file that was given to Workman during discovery was created by the State on November 5, 2013.)

picture was taken. Thus, these exact issues were considered at trial. This second analysis presents no new facts and no new evidence.

{¶29} Neither of these two analyses directs our attention to new facts that Workman was unavoidably prevented from discovering, and the arguments in Workman's appeal, therefore, fail to satisfy the first prong of R.C. 2953.23(A)(1). *See State v. Babos*, 6th Dist. Lake No. L-11-1258, 2013-Ohio-1256, ¶ 14 (holding, on review of a trial court's decision to deny a motion for a new trial, that a new trial will not be granted if the allegedly new evidence is merely evidence that "impeach[es] or contradict[s] the former evidence."); *State v. Hoover-Moore*, 2015-Ohio-4863, 50 N.E.3d 1010 (10th Dist.), ¶ 18 (holding, on review of a trial court's decision to deny a motion for a new trial, that a new expert opinion was merely cumulative to another expert's testimony at trial and was not newly discovered evidence).

{¶30} Even if the first prong of this test were satisfied, Workman's petition still does not meet the requirements of the second prong of R.C. 2953.23(A)(1). Neither of the analyses that Workman points to on appeal are able to prove that the person in the photograph—State's Exhibit 104-3—was not Workman. In the first analysis, the alleged expert only stated that he believes that the person who is partially visible in the mirror depicted in the photograph has a tattoo on his right arm. Workman did not relay a digital copy of this photograph to the alleged expert, so the alleged expert examined the printed copy of this exhibit as did the jurors in

Workman's trial. This alleged expert's opinion can be believed or disbelieved upon examination of the photograph. Similarly, the second analysis does not establish a fact that would overturn Workman's conviction. The file properties examined by Workman's alleged expert cannot establish when the pictures were taken. Presenting information to the jury that documents when a copy of the pictures taken from Workman's memory card was created for discovery would not have changed the outcome of Workman's trial.

{¶31} The other evidence against Workman is overwhelming. Workman was caught in a sting operation that was tailored to this specific case. Workman was in possession of the previously taken nude pictures of these two minors. Workman was identified as the photographer by the two girls who were the subjects of these photographs. Both of these girls had been familiar with Workman through his work at a gym. One of these girls had known him for several years. Had the photograph that was introduced as State's Exhibit 104-3 not been admitted at trial, Workman would still have been convicted. It was the girls' testimony that linked Workman to these crimes not this single photograph. Further, the girl is fully clothed in the photograph that is Exhibit 104-3. Workman is not serving time in prison for taking a picture of a fully clothed minor. Even if these analyses did prove that Workman did not take the picture that was admitted into evidence as Exhibit 104-3, this would still not establish that he did not take the other pictures in which the minors are not clothed. For these reasons, Workman has not clearly and

convincingly demonstrated that he would not have been convicted had Exhibit 104-3 been taken out of the equation.

*Conclusion*

**{¶32}** Ultimately, the defendant directs our attention to a photograph that was admitted as an exhibit during his trial. Ex. 104-3. Thus, the defendant has not discovered new evidence but is merely presenting a new argument about old evidence. Since he was not able to demonstrate that the exception for successive petitions for postconviction relief applies in this case, the trial court did not have jurisdiction under R.C. 2953.23(A)(1) to consider this successive petition for postconviction relief and, therefore, did not err in dismissing Workman's petition or in declining to hold an evidentiary hearing on this matter. *See Cunningham, supra*, at fn. 3. For these reasons, Workman's first and second assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Auglaize County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**