[Cite as *State v. Keith*, 192 Ohio App.3d 231, 2011-Ohio-407.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

The STATE OF OHIO,

    APPELLEE,

    v.

KEITH,

    APPELLANT.

CASE NO.  3-10-19

O P I N I O N

Appeal from Crawford County Common Pleas Court
Trial Court No. 94 CR 0042

Judgment Affirmed

Date of Decision:  January 31, 2011

APPEARANCES:

    Clifford J. Murphy, for appellee.

    Tyson Fleming and Rachel Troutman, for appellant.

    ROGERS, P.J.

{¶ 1} Defendant-appellant, Kevin Keith, appeals the judgment of the Court of Common Pleas of Crawford County denying his motion for leave to file a delayed motion for a new trial, as well as the underlying motion for a new trial. On appeal, Keith argues that the trial court erred when it abused its discretion in denying his motion without holding a hearing, when it evaluated and denied his motion under the wrong standards for a new trial, when it applied the doctrine of res judicata to his claims, and when it failed to rule on his claims under *Arizona v. Youngblood* (1988), 488 U.S. 51. Based upon the following, we affirm the judgment of the trial court.

{¶ 2} In February 1994, the Crawford County Grand Jury indicted Keith on three counts of aggravated murder in violation of R.C. 2929.02, with capital-offense specifications, and on three counts of attempted aggravated murder in violation of R.C. 2903.01 and 2923.02, felonies of the first degree. The indictment arose from an event during which Marichell D. Chatman, her seven-year-old daughter, Marchae D. Chatman, her cousins, Quanita M. Reeves and Quinton M. Reeves, her aunt, Linda Chatman, and Richard Warren were shot in Marichell's apartment. Marichell, Marchae, and Linda died as a result of the shooting, and Quanita, Quinton, and Richard were seriously injured.

{¶ 3} In March 1994, Keith entered a plea of not guilty to all counts in the indictment.

{¶ 4} In May 1994, Keith filed a notice of alibi. Additionally, the case proceeded to a jury trial, at which the jury convicted Keith on all six counts of the indictment as

charged and recommended the death penalty for the aggravated-murder convictions. At trial, evidence was presented that approximately eight hours after the shooting, victim Richard Warren, while recovering in the hospital, wrote the name "Kevin" on a piece of paper and thereafter selected Keith from a photo array; that investigators recovered 24 bullet casings from the scene of the shooting, which had all been fired from the same gun; and that investigators discovered another matched bullet casing at the entrance to the General Electric plant in Bucyrus, where Keith had picked up his girlfriend after the shooting.

{¶ 5} In June 1994, the trial court sentenced Keith to death on the aggravated-murder convictions and to a 7-to-25-year prison term on each of the convictions for attempted aggravated murder, to be served consecutively. Subsequently, Keith appealed his conviction and sentence.

{¶ 6} In April 1996, this court affirmed Keith's conviction and sentence, *State v. Keith*, 3d Dist. No. 3-94-14, 1996 WL 156710, and also issued a separate opinion regarding Keith's death sentence in conformity with R.C. 2929.05(A). *State v. Keith*, 3d Dist. No. 3-94-14, 1996 WL 156716. Subsequently, Keith appealed to the Supreme Court of Ohio.

{¶ 7} In September 1996, while his direct appeal was pending, Keith filed his first petition for postconviction relief in the trial court, alleging that he had been denied

effective assistance of counsel and attaching numerous exhibits that were not part of the trial record.

{¶ 8} In December 1996, Keith filed a supplemental petition for postconviction relief, in which he alleged ineffective assistance of counsel and requested an evidentiary hearing.

{¶ 9} In October 1997, the Supreme Court of Ohio unanimously affirmed Keith's conviction. *State v. Keith* (1997), 79 Ohio St.3d 514, reconsideration denied (1997), 80 Ohio St.3d 1450, certiorari denied (1998), 523 U.S. 1063.

{¶ 10} In February 1998, the trial court denied Keith's first petition for postconviction relief, without granting an evidentiary hearing, in a 16-page opinion in which it addressed all of his arguments, as well as each of his attached exhibits.

{¶ 11} In March 1998, Keith appealed the trial court's denial of his first petition for postconviction relief.

{¶ 12} In August 1998, this court affirmed the trial court's denial of Keith's first petition for postconviction relief. *State v. Keith*, 3d Dist. No. 3-98-05, 1998 WL 487044.

{¶ 13} In September 1999, Keith filed a habeas corpus petition in the United States District Court, presenting eight grounds for relief.

{¶ 14} In June 2001, the United States District Court denied Keith's petition for habeas corpus. Thereafter, Keith appealed the denial and sought a certificate of appealability.

{¶ 15} In March 2003, the United States Court of Appeals granted a certificate of appealability on six of Keith's grounds for relief.

{¶ 16} In August 2004, Keith filed a second petition for postconviction relief with the trial court.

{¶ 17} In July 2006, the United States Court of Appeals denied Keith's writ of habeas corpus. *Keith v. Mitchell* (C.A.6, 2006), 455 F.3d 662, petition for rehearing denied en banc (C.A.6, 2006), 466 F.3d 540, certiorari denied (2007), 549 U.S. 1308.

{¶ 18} In February 2007, the trial court dismissed Keith's second petition for postconviction relief.[1]

{¶ 19} In March 2007, Keith appealed the trial court's dismissal of his second petition for postconviction relief to this court.

{¶ 20} In August 2007, while his appeal to this court was pending, Keith filed a motion for leave to file a delayed motion for new trial and a motion for a new trial in the trial court, as well as a motion to reopen his direct appeal pursuant to App.R. 26(B) with this court, which this court denied.

{¶ 21} In February 2008, this court affirmed the trial court's denial of Keith's second petition for postconviction relief. *State v. Keith*, 176 Ohio App.3d 260, 2008-Ohio-741. Thereafter, Keith appealed this court's denial to the Supreme Court of Ohio.

---

[1] The lengthy delay between Keith's second petition for postconviction relief and the trial court's judgment entry resulted from a stipulation between Keith and the state that the state petition should be suspended pending a decision by the United States Court of Appeals on the writ of habeas corpus.

{¶ 22} In March 2008, Keith filed a motion for an evidentiary hearing for his motion for new trial.

{¶ 23} In April 2008, the Supreme Court of Ohio affirmed this court's denial of Keith's August 2007 motion to reopen pursuant to App.R. 26(B). *State v. Keith*, 119 Ohio St.3d 161, 2008-Ohio-3866.

{¶ 24} In July 2008, the trial court denied Keith's motion for leave to file a delayed motion for new trial, motion for evidentiary hearing, motion for new trial, and all ancillary motions. Thereafter, Keith appealed the trial court's denial of his motions to this court.

{¶ 25} In December 2008, this court affirmed the trial court's judgment denying his motions. *State v. Keith*, 3d Dist. No. 3-08-15, 2008-Ohio-6187.

{¶ 26} In May 2010, Keith filed a motion for leave to file a delayed motion for a new trial pursuant to Crim.R. 33(B), arguing that the state had improperly suppressed evidence, causing him to be unavoidably prevented from discovering the evidence upon which he relied, and that the state violated his constitutional rights when it failed to disclose evidence favorable to him. Specifically, Keith argued that pending litigation in an unrelated suit against the Bucyrus Police Department revealed that a phone call made by witness Nurse John Foor to the police department stating that victim Richard Warren had written the name "Keith" on a piece of paper never occurred and that a bullet casing allegedly found by witness Farnella Graham near the General Electric plant, where Keith

had picked up his girlfriend following the shooting, was not actually found at that location.

{¶ 27} Concerning the phone call, Keith argued that Lieutenant John Beal of the Bucyrus Police Department testified that he took the phone call from Nurse Foor at 5:00 a.m.; that a public records request had been made to obtain a record of the phone call, but Lieutenant Beal responded that "[t]he recorded phone call from Nurse Foor was not copied for the prosecution or the defense at that time," that the recording had been destroyed, and that there was no daily phone log documenting incoming calls; that the city of Bucyrus had since been sued in an unrelated case for the police department's destruction of the recordings of the police department's phone calls in *State ex rel. Davila v. Bucyrus*, case No. 09 CV 0303; that, due to the *Davila* case, Keith's counsel became aware of the existence of contemporaneous radio logs, which recorded information about the police department's phone calls; and that there was no 5:00 a.m. phone call evidenced on the radio log, despite Lieutenant Beal's and Nurse Foor's testimony.

{¶ 28} Concerning the bullet casing, Keith argued that at trial, the state linked him to the murders because he had picked up his girlfriend at the General Electric plant at 11:00 p.m. on the night of the murders; that at trial, a police officer testified that he was dispatched to an address "right across the street from General Electric," where a witness stated she found a bullet casing on the sidewalk in front of her house; and that the newly

discovered radio logs, however, indicate that the witness stated she found the casing "in the McDonald's area," which was over one mile away from the General Electric plant.

{¶ 29} Keith concluded that because the Bucyrus Police Department destroyed the recordings of the station's phone calls, and because Lieutenant Beal maintained that there was no daily phone log that documented incoming calls, he was unavoidably prevented from discovering the evidence regarding Nurse Foor's phone call and the phone call regarding the bullet casing; that he learned of the existence of the radio logs only due to the proceedings in the *Davila* case; and that the state misled him and failed to disclose this evidence that was favorable to him.

{¶ 30} Contemporaneously, Keith filed an underlying motion for a new trial based on newly discovered evidence pursuant to Crim.R. 33(A)(6), setting forth the same argument as in his motion for leave to file a delayed motion for a new trial. However, Keith additionally argued that because the state allegedly suppressed evidence favorable to his defense, he needed only to demonstrate that the evidence was material to his case, citing *State v. Johnston* (1988), 39 Ohio St.3d 48, 60 (" 'the usual standards for new trial are not controlling because "the fact that such evidence was available to the prosecution and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial" ' "). Keith contended that, accordingly, he did not need to demonstrate "the usual standards," or that the newly discovered evidence probably would have resulted in acquittal.

{¶ 31} Thereafter, the state filed a motion in opposition to Keith's motion for leave to file a delayed motion for a new trial, as well as the underlying motion for a new trial. The state argued that Keith's motions indicated that he had been in possession of the information at issue since 2007 and had not explained why the claims were not subject to res judicata in his successive new trial motion; that the information, at best, could only be used for impeachment purposes, as both witnesses at issue testified at trial; and that the information was not material and was a corollary matter as both witnesses testified at trial, Nurse Foor testifying that he contacted the police department and informed them that Warren had written "Kevin" on a piece of paper, and Farnella Graham testifying that she discovered a bullet casing on the sidewalk in front of her house, across the street from the General Electric plant, and that her daughter had called the police department.

{¶ 32} In August 2010, the trial court denied Keith's motion for leave, as well as the underlying motion for a new trial in a thorough 15-page judgment entry. The trial court noted the extensive history of the case, emphasizing that many courts and judges had evaluated the evidence in the case and had concluded that the evidence strongly supported Keith's guilt and the jury's verdict. Additionally, the trial court found that Keith's claims regarding Nurse Foor's testimony were "remote and collateral to the plain fact that Richard Warren, although shot once in the jaw, twice in the back, and finally once in the buttocks, survived to testify in court and to positively identify Kevin Keith." Further, the trial court stated that 25 bullet casings were recovered; that experts testified

that all 25 bullet casings were fired from the same weapon; that all of the bullet casings were recovered at or near the location of the shootings, except for one; that the one remaining bullet casing was discovered near the entrance to the General Electric plant in Bucyrus; that the Bucyrus Police Department radio log included an entry reading "1221 S. Walnut. Woman found casing. Thinks she may have picked it up in the McDonald's area"; that, at trial, Officer John Seif testified that Farnella Graham told him, face to face, that she recovered the casing "on the sidewalk that morning"; that, at trial, Farnella Graham testified that she found the casing on the sidewalk in front of her house the morning of February 14 while cleaning fast-food litter from her front walk, that she lived across the street from the General Electric plant, and that her daughter had called the police about the casing; that the bullet was linked to Keith because he had picked up his girlfriend at the General Electric plant on the evening of February 13; and that the discrepancy in the log concerning the location of the casing was likely explained by Farnella Graham's testimony at trial that she initially assumed that the fast-food litter she found by the casing was from McDonald's, but then noticed it was from Wendy's.

{¶ 33} The trial court then enumerated the following findings of fact and conclusions of law:

> 1. Notwithstanding repeated collateral attacks upon the capital convictions of Kevin Keith, the evidence of his guilt beyond a reasonable doubt is compelling, persuasive and overwhelming.
>
> 2. The defendant has failed to establish, by any standard of proof, that the so-called newly discovered evidence regarding Nurse John Foor

would produce a strong probability for a change in the jury verdict of guilty.

3.    The issue of whether Nurse John Foor did or did not telephone BPD [Bucyrus Police Department] on a date and time certain is only remotely material to the issues in this case, and unlikely to impact the credibility of the witness Richard Warren.

4.    The issue of whether Nurse John Foor did or did not telephone the BPD on a date and time certain does not impeach or contradict Richard Warren's identification of the Defendant, much less does it contradict the constellation of evidence, both direct and circumstantial, connecting Kevin Keith to the events in question.

5.    The issue of John Foor's testimony has been so thoroughly explored and dissected as to be foreclosed and resolved as res judicata. This most recent issue appears to have been known to Keith's attorneys for more than a year.

6.    The Defendant has failed to establish, by any standard of proof, that the so-called newly discovered evidence regarding State's Exhibit 43 [the bullet casing] and the police log would produce a strong probability for a change in the jury verdict of guilty.

7.    The police log, regarding the discovery of State's Exhibit 43, on its face, merely contradicts the testimony of Farnella Graham; however, the log entry is patently erroneous and unworthy of belief.

8.    The combination of both direct and circumstantial evidence in this case supports the finding that even were this court to grant a motion for new trial, the result—a verdict of guilty—would remain the same.

{¶ 34} It is from this judgment that Keith appeals, presenting the following assignments of error for our review.[2]

*Assignment of Error No. I*

---

[2] In September 2010, Governor Ted Strickland granted clemency to Keith, commuting his death sentence to life without parole.

The trial court abused its discretion in denying appellant's motion for leave to file a motion for new trial and for failing to hold a hearing.

*Assignment of Error No. II*

The trial court erred in evaluating and denying appellant's motion for new trial under the wrong standards for new trial, when the newly discovered evidence was available to the prosecution and not submitted to the defense.

*Assignment of Error No. III*

The trial court erred in applying the doctrine of res judicata to appellant's claims.

*Assignment of Error No. IV*

The trial court erred in failing to rule on appellant's claimed [sic] under *Arizona v. Youngblood*.

*Assignments of Error Nos. I and II*

{¶ 35} In his first assignment of error, Keith argues that the trial court abused its discretion when it denied his motion for leave to file a motion for a new trial and failed to hold a hearing on the motion. Specifically, Keith contends that he was entitled to file his motion for a new trial because he was unavoidably prevented from discovering certain evidence relied upon in his motion for a new trial. The state responds that Keith failed to meet his burden under Crim.R. 33 because he failed to file his motion within 120 days of the jury's verdict and failed to demonstrate by clear and convincing proof that he was unavoidably prevented from filing a motion for a new trial, as evidence demonstrated that Keith obtained the radio log at issue in 2007; that Nurse John Foor testified at trial that he

-12-

called the police department; that Lieutenant Beal testified at trial, corroborating Foor's testimony; and that, consequently, the radio log was not material evidence. Further, the state responds that because Farnella Graham testified at trial that she located the bullet casing across the street from the General Electric plant, and Officer Seif testified at trial, corroborating her testimony, the radio log was not material evidence.

{¶ 36} In his second assignment of error, Keith argues that the trial court erred in evaluating and denying his motion for a new trial under the wrong standards, given that the newly discovered evidence was available to the prosecution and not submitted to the defense. Specifically, Keith contends that he presented a claim under *Brady v. Maryland* (1963), 373 U.S. 83, which was not subject to the usual standard for a motion for a new trial, and that the trial court should not have weighed the sufficiency of the evidence but should have considered the evidence in the aggregate. The state responds that *Brady* requires a "reasonable probability" of a different outcome with the exculpatory evidence, or an "undermined confidence in the trial result obtained without exculpatory evidence," which Keith failed to demonstrate.

{¶ 37} Motions for a new trial are governed by Crim.R. 33(A), which provides:

> A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
>
> * * *
>
> (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the

ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

{¶ 38} Additionally, Crim.R. 33(B) sets forth timing requirements for new trial motions and provides:

Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶ 39} Accordingly, a party may not seek a new trial on the basis of newly discovered evidence after the 120-day time limit unless he can demonstrate that he was unavoidably prevented from discovering the new evidence within the time limit. App.R. 33(B). "A party is 'unavoidably prevented' from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could

not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence." *State v. Lee*, 10th Dist. No. 05AP-229, 2005-Ohio-6374, ¶8.

{¶ 40} In order to be able to file a motion for a new trial based on newly discovered evidence beyond the 120 days prescribed in the above rule, a petitioner must first file a motion for leave, showing by "'clear and convincing proof that he has been unavoidably prevented from filing a motion in a timely fashion.'" *State v. Graham*, 3d Dist. No. 5-05-13, 2006-Ohio-352, ¶10, quoting *State v. Neace* (Mar. 1, 2000), 3d Dist. No. 10-99-07, 2000 WL 228921. The standard of clear and convincing evidence used in Crim.R. 33(B) means "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, paragraph three of the syllabus.

{¶ 41} Generally, a trial court's decision to deny a motion for a new trial will not be disturbed on appeal absent an abuse of discretion. *State v. Ray*, 3d Dist. No. 14-05-39, 2006-Ohio-5640, ¶53, citing *State v. Farley*, 10th Dist. No. 03AP-555, 2004-Ohio-1781, ¶6-7. However, in cases where the appellant has alleged that the prosecution suppressed evidence, the appellate court does not review under the abuse-of-discretion standard but is required to conduct a due process analysis to determine "whether a defendant's

substantial rights have been materially affected." *State v. Johnston* (1988), 39 Ohio St.3d 48, 59. In cases where the appellant has alleged that the prosecution suppressed evidence, he is not subject to the usual burden required to obtain a new trial— demonstrating that the newly discovered evidence *probably* would have resulted in acquittal. Id. at 60, citing *United States v. Agurs* (1976), 427 U.S. 97, 111.

{¶ 42} A prosecutor's suppression of evidence favorable to an accused violates due process rights where the evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87. However, "[i]n order to constitute a violation of due process, the evidence withheld from Defendant must be (1) favorable to the defendant and (2) material to guilt or innocence." *State v. Coleman*, 2d Dist. Nos. 04CA43, 04CA44, 2005-Ohio-3874, ¶36, citing *Brady*. Accordingly, the Supreme Court of Ohio has held that "the key issue in a case where exculpatory evidence is alleged to have been withheld is whether the evidence is material." *Johnston*, 39 Ohio St.3d at 60. " '[E]vidence is "material" only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different; a 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, ¶129, quoting *United States v. Bagley* (1985), 473 U.S. 667, 682. Finally, the United States Supreme Court has held that "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected

the outcome of the trial, does not establish "materiality" in the constitutional sense." *Agurs*, 427 U.S. at 109-110.

{¶ 43} Here, we find that Keith's argument fails under the due process analysis, as he has failed to demonstrate materiality. Thus, we need not determine whether he was unavoidably prevented from filing his motion in a timely fashion or whether he demonstrated that the state suppressed the radio log.

{¶ 44} Initially, we reiterate this court's prior finding that "a jury of twelve citizens found the evidence presented sufficient to convict Keith, and this verdict has stood the test of time and an exhaustive series of both state and federal appeals." *Keith*, 2008-Ohio-6187, at ¶35.

{¶ 45} Concerning the phone call from Nurse Foor, Keith argued that Lieutenant Beal testified at trial that he took the phone call from Foor at 5:00 a.m., but that in newly discovered radio logs that recorded information about the police station's phone calls, there was no 5:00 a.m. phone call evidenced on the radio log. However, Keith's argument ignores the fact that both Beal and Foor testified at trial regarding the phone call and were subject to cross-examination on the matter, making the mere absence of the phone call on the station's radio log immaterial. Further, as the trial court found, victim Richard Warren survived the shooting and testified in court that Keith was the shooter. In light of the preceding, we cannot find that the absence of the phone call at issue from

the radio logs is even remotely sufficient to undermine confidence in the outcome of the trial.

{¶ 46} We further find the offered evidence concerning the radio log entry about the bullet casing to be immaterial. Keith argued that testimony the state presented at trial indicated that a bullet casing was discovered right across the street from the General Electric plant but that the newly discovered radio logs contained an entry indicating that the caller indicated that the casing was discovered "in the McDonald's area," which was over one mile away from the General Electric plant. However, Keith's argument again ignores the testimony that was heard at trial on the matter. At trial, Officer John Seif testified that Farnella Graham told him, face to face, that she recovered the casing "on the sidewalk that morning," and that, at trial, Farnella Graham testified that she found the bullet casing on the sidewalk in front of her house while cleaning fast-food litter from her front walk; that she lived across the street from the General Electric plant; and that her daughter had called the police about the bullet casing. We agree with the trial court that the discrepancy in the log concerning the location of the bullet casing was likely explained by Graham's testimony at trial that she initially assumed that the fast-food litter she found by the bullet casing was from McDonald's, but then noticed that it was from Wendy's, and that not she but her daughter called the police. In light of the clear testimony heard at trial, as well as the obvious explanation for the discrepancy in the radio log entry, we do not find that this evidence is even remotely sufficient to undermine

confidence in the outcome of the trial. Consequently, we find that the trial court did not err in overruling Keith's motion for leave to file a motion for a new trial.

{¶ 47} Accordingly, we overrule the first and second assignments of error.

*Assignment of Error No. III*

{¶ 48} In his third assignment of error, Keith argues that the trial court erred in applying the doctrine of res judicata to his claims. Specifically, Keith contends that a trial court must grant a new trial if the defendant presents newly discovered evidence material to his defense that could not have been discovered with reasonable diligence and produced at trial. The state responds that Keith was aware of the issue concerning Nurse Foor's testimony for over one year, making his argument barred by res judicata, and, further, that this was not the only basis on which the trial court denied Keith's motions.

{¶ 49} Having found in our analysis of Keith's first and second assignments of error that he failed to demonstrate grounds for a new trial, we find the third assignment of error to be moot, and we decline to address it. App.R. 12(A)(1)(c).

*Assignment of Error No. IV*

{¶ 50} In his fourth assignment of error, Keith argues that the trial court erred in failing to rule on his claims under *Arizona v. Youngblood.* Specifically, Keith contends that the trial court was required to grant a new trial because his due process rights were violated when the police acted in bad faith and failed to preserve potentially useful evidence. The state responds that according to the Supreme Court of Ohio's decision in

*State v. Geeslin* (2007), 116 Ohio St.3d 252, a defendant is required to establish that the state acted in bad faith when the evidence is only potentially useful and not material and that Keith failed to offer any rational basis for bad faith.

**{¶ 51}** Having found in our analysis of Keith's first and second assignments of error that he failed to demonstrate grounds for a new trial, we find the fourth assignment of error to be moot, and we decline to address it. App.R. 12(A)(1)(c).

**{¶ 52}** Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

PRESTON and WILLAMOWSKI, JJ., concur.