[Cite as *State v. McNeal*, 2021-Ohio-1520.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28885 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-3409 |
| | : | |
| TRACY K. MCNEAL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of April, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. KETTER, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
　　Attorney for Plaintiff-Appellee

CRAIG M. JAQUITH, Atty. Reg. No. 0052997, Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
　　Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Tracy K. McNeal appeals from the trial court's order denying his motion for leave to file a motion for new trial. The judgment of the trial court will be affirmed.

{¶ 2} In October 2014, a Montgomery County grand jury indicted McNeal for two counts of rape (substantially impaired victim) in violation of R.C. 2907.02(A)(1)(c), a first-degree felony, with a repeat violent offender specification attached to the second count. The two offenses involved different victims, one in 2009 and one in 2014, and the counts were severed for trial. McNeal's first trial on Count Two ended in a mistrial. When he was tried on that count for a second time, he was found guilty and sentenced to 11 years for rape and nine years for the specification, for an aggregate term of 20 years; he was also designated a Tier III sex offender. This Court affirmed his conviction on appeal. *State v. McNeal*, 2d Dist. Montgomery No. 28123, 2019-Ohio-2941, ¶ 2-3. (The other count in the indictment was later dismissed.)

{¶ 3} In February 2020, McNeal filed a motion for leave to file a motion for new trial. In support of the motion, McNeal asserted that he had recently obtained "withheld evidence of prosecutorial misconduct." Specifically, McNeal asserted that the victim of the rape had testified at trial that she had "consumed vodka in an amount sufficient to cause her to vomit and become so drunk that she 'couldn't stop anything,' " but that he had been convicted of rape of a substantially impaired victim without the jurors' learning whether or not the victim had any alcohol in her system when her blood was drawn at the hospital approximately 3.5 hours after the alleged sexual assault. According to McNeal, the results of the blood testing, which he obtained only after his counsel made a public records request directly to the Dayton Police Department (DPD), showed that the victim "had no detectable amount of alcohol in her bloodstream" on the night in question.

According to the motion, McNeal obtained this information "shortly after" our opinion was issued in his direct appeal.

{¶ 4} McNeal attached to his motion an affidavit from his defense counsel and certain lab test results.[1]   In his affidavit, counsel stated that he had not been provided with the victim's blood test results either in "routine pretrial discovery" or in response to a specific inquiry to the prosecutor about the existence of such results, and that he would have used such results to demonstrate that the victim, "if impaired at all, was not *substantially* impaired" on the night of the alleged rape.

{¶ 5} McNeal argued in his motion that the State had "failed to fulfill its obligation" to provide him with material evidence that tended to exculpate him as required by the Fifth Amendment and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).   He asserted that the improperly-withheld blood-test results established that, at the time of the alleged assaulted, the victim had not been impaired at all or had not been substantially impaired.   McNeal asserted that, even taking into account standard estimates for the metabolization rate of ethanol in the human body and the amount of time that had passed between the time of the alleged rape and the blood draw, the victim's blood alcohol content at the time of the incident would have been "approximately 0.061%" and "she could have legally operated a motor vehicle in the State of Ohio."

{¶ 6} Because of the discovery of this "Brady material" after his conviction, McNeal

---

[1] Exhibit 1 was the victim's signed consent to blood/urine collection for testing on the night of the alleged rape.  Exhibit 2 was a Miami Valley Regional Crime Laboratory Report regarding the results of the testing performed on the victim's blood and urine, and an affidavit of an employee of the crime lab.  According to the report, ethanol was not detected in the victim's blood, it was detected in her urine, and her drug test was positive for THC and Benzodiazepines; the report stated that it was issued to Officer John Malott of the DPD.

asserted that he had been "deprived of a fair trial" in that his defense counsel had not been able to use the blood-test results to show that the victim had not been substantially impaired. McNeal noted that, under Ohio law, the information in question could not have been obtained through a public records request during the pendency of McNeal's trial proceedings. For these reasons, McNeal argued that the court should grant him leave to file a delayed motion for a new trial.

{¶ 7} As described above, McNeal's defense counsel at trial, Lucas Wilder, stated by affidavit attached to the motion (Exhibit 3) that no blood test results had been included in the discovery provided to him by the State or prior defense counsel, that he specifically requested from the prosecutor several weeks before trial any medical records from the victim's emergency room visit, and that he was told that no such records existed. Wilder further averred that he "never received a report regarding [the victim's] blood-test results" prior to trial. Finally, Wilder stated that, had he been aware of the blood-test results, he would have attempted to introduce that evidence at trial to establish that the victim either had not been impaired at all at the time of the alleged rape or that she had not been substantially impaired at that time. An e-mail exchange between Wilder and the prosecutor was attached to the affidavit. In the exchange, Wilder stated "I have the rape kit records but don't see any hospital records from her trip to the ER. Do you have those? I'd like to get have [sic] those"; the prosecutor responded: "There are no actual ER records. I checked on this before."

{¶ 8} The State did not file a response to McNeal's motion for leave to file a motion for new trial. On March 13, 2020, the trial court overruled on the motion, stating:

In the present case, the Court first notes that, even if Defendant was

to be granted a new trial, there is not a strong probability that the test results would change the outcome. Specifically, although the test results appear to show that the presence of alcohol was not detected at the time the test occurred, the victim's blood was positive for THC, and her urine was positive for Benzodiazepines. Accordingly, notwithstanding any testimony regarding the lack of alcohol present, the jury could just as easily find that the victim was substantially impaired because of the other substances present in her blood and urine.

In addition, regarding Defendant's arguments related to *Brady v. Maryland*, * * *, the Court notes that Defendant fails to allege or establish that the State was in possession of the results of the blood test, and failed to provide them to Defendant's trial counsel. Rather, the correspondence between Defendant's trial counsel and the State merely suggest that, just like Defendant's counsel, the State was also unaware that any emergency room records existed. The State cannot be expected to disclose evidence that it does not have and of which it is not aware.

{¶ 9} McNeal appeals from the trial court's order, raising one assignment of error:

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MR. MCNEAL'S MOTION FOR LEAVE TO FILE MOTION FOR A NEW TRIAL. CRIM.R. 33.

{¶ 10} McNeal asserts that, through a public records request made to the DPD after his direct appeal, his attorney obtained a report from the Miami Valley Regional Crime Laboratory showing that the victim's blood-alcohol content "was zero"

approximately 3.5 hours after the alleged rape, and that this report was provided to the police but was not provided to defense counsel in discovery. He argues that this evidence would have "directly undercu[t]" the victim's trial testimony that McNeal "engaged in sexual conduct with her when she was '[r]eally, really drunk.' " McNeal asserts that he "discovered [the] new evidence more than 120 days after his trial concluded," and therefore he filed a motion for leave to file a motion for a new trial.

{¶ 11} McNeal asserts that, in overruling his motion, the trial court "did not find that [he] was unavoidably prevented from discovering the exculpatory lab report, and thus did not deny leave on that basis." He argues that the trial court's conclusions that the jury could have found that the victim had been impaired through the use of substances other than alcohol and that he "did not establish that the State was in possession of the lab report" show that the trial court abused its discretion.

{¶ 12} According to McNeal, the victim testified that she was very drunk, "not that she was high or impaired by other substances," and that the jury's conclusion that she was impaired "necessarily rested on a finding that she had had too much to drink." He argues that the trial court improperly speculated that the jury could have found that the victim was impaired because of other substances based on the facts adduced at trial. McNeal asserts that a "reasonable juror would have been quite troubled" to learn that a lab report "directly undercut" the victim's claim about "extreme intoxication," and he argues that the State never contended that the victim's impairment stemmed from anything other than alcohol use. "Thus, the trial court's speculation about an alternative basis for a jury finding of impairment [was] 'arbitrary' and 'unreasonable,' and constitute[d] an abuse of discretion."

{¶ 13} McNeal argues that the trial court's "alternative basis" for denying his motion, namely that he failed to demonstrate that the State possessed the lab report, was "an even more egregious abuse of discretion." He refutes the trial court's assertion that Exhibit 2 was an "emergency room record" of which the State may simply have been unaware and thus could not have been expected to provide in discovery," by pointing out that Exhibit 2 was "plainly issued by the Miami Valley Regional Crime Laboratory, not a hospital," and was issued "directly to one of the State's trial witnesses, Crime Scene Investigator John Malott of the [DPD]."

{¶ 14} McNeal asserts that the trial evidence regarding the victim's alcohol consumption and level of impairment on the night of the alleged rape was "equivocal." Specifically, he argues that the victim testified to "an excessive amount of alcohol consumption that night – a small bottle of vodka plus additional shots, but stated to the nurse examiner that night that she "had only consumed four or five shots of vodka over the course of the evening." The nurse examiner testified that the victim was "alert, oriented, and not exhibiting slurred speech, approximately two hours after claiming to be intoxicated to the point of near-unconsciousness," and that "her report would have noted if C.R. had appeared to be under the influence of alcohol," but no such notation was made.

{¶ 15} Finally, McNeal asserts that the jury's verdict reflected its belief that the State had proven the element of substantial impairment beyond a reasonable doubt. But if the jury had known that the victim's blood contained no alcohol shortly after the incident, there is a reasonable probability that one or more of the jurors "would have come to a different conclusion about [her] level of impairment." McNeal asserts that, because he

was able to obtain the crime-lab report (the newly discovered evidence) only through "a post-trial public records request" and because there was a reasonable probability that that evidence would have changed the outcome of the trial, his motion for leave to file a motion for a new trial should have been granted.

{¶ 16} The State responds that McNeal did not justify the untimeliness of his motion and that the alleged new evidence would not have affected the outcome of the trial. The State notes that McNeal did not submit evidence to justify his untimeliness and did not request a hearing to supplement his motion. It asserts that the trial court properly denied McNeal's motion without a hearing because he "failed to demonstrate he was unavoidably prevented from discovering the new evidence or from filing his untimely motion within a reasonable amount of time after discovering the evidence."

{¶ 17} The State also notes that, on January 3, 2018, McNeal filed a petition for postconviction relief, asserting in part that defense counsel was ineffective for failing to investigate the blood/urine test evidence and obtain the results of the blood/urine test. McNeal also filed a motion seeking to compel the Miami Valley Regional Crime Laboratory to produce the blood/urine test results to establish that the victim was not substantially impaired "due to the consumption of prescription & illegal drugs and an inordinate amount" of alcohol. The State notes that both his petition and his motion to compel were denied, and that these orders were not appealed.

{¶ 18} According to the State, R.C. 149.43 requires that records subject to a public records request be provided "promptly" when requested, and that after receiving the lab results, McNeal still waited approximately seven months to file his motion. The State further argues:

*** While McNeal cites *State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, for the proposition that public records requests cannot be made during the pendency of the trial case, he not only failed to submit documentary evidence of the request, but of any attempts to obtain the records in any other manner prior to July 2019. Notably, the *Caster* decision only found that confidential law enforcement investigatory records are not available for public records disclosure until the *completion of the trial*; it does not extend to the completion of the appeal. *Id*. at ¶ 47. Thus, since McNeal was convicted in November 2016, he could have made a public record request as early as December 28, 2016, when *Caster* was decided. Yet, considering the record request was not made until, presumably, sometime in July 2019, there was no reasonable explanation for the delay.

{¶ 19} Regarding the email from defense counsel to the prosecutor regarding hospital records, the State asserts that neither Wilder's affidavit nor the text messages indicated that trial counsel had requested crime lab reports or alcohol/urine tests; the emergency room records would have been held by Miami Valley Hospital, and the lab reports would have been maintained by the Miami Valley Regional Crime Laboratory. The State asserts that McNeal "did not explain why he had to delay until February 2020 to obtain information from his prior counsel and submit his motion."

{¶ 20} The State asserts that Officer Malott, an evidence technician and the person listed on the lab report, testified that he picked up the rape kit containing the blood and urine samples and took it "to the evidence garage to be sent over to the crime lab." The

State asserts that "the document indicating the time, date, location, and drawer of blood and urine from [the victim] at the hospital" was part of the discovery that McNeal was provided. Moreover, the nurse and Officer Malott testified at trial, yet there were no questions asked by the State or defense regarding the blood and urine draw or any lab results.

{¶ 21} The State quotes McNeal's petition for post-conviction relief regarding defense counsel's awareness of the blood/urine test. According to the State, "[c]onsidering the lab report was purportedly created in November 2014 and, therefore available at the time of trial, and counsel could have, with reasonable diligence, discovered and produced the laboratory report within 120 days of the verdict, it does not constitute new evidence for purposes of a motion for leave to file a motion for a new trial."

{¶ 22} The State asserts that, prior to January 3, 2018, McNeal was aware of the Miami Valley Regional Crime Laboratory report in question based on McNeal's motion for the blood/urine results from the lab. Also, as early as August 1, 2018, McNeal had counsel who not only handled his direct appeal but also filed the motion for leave to file a motion for new trial at issue in this appeal. The State asserts that McNeal provided no evidence identifying exactly when the lab records were requested or received and that, because McNeal was aware of the existence of the bases for his motion for a new trial for at least three years before filing his motion, he "was not unavoidably prevented from filing a timely motion." The State contends that the trial court did not abuse its discretion in failing to hold a hearing on the issue of unavoidable delay, as McNeal never requested a hearing on his motion.

{¶ 23} Further, the State argues that there is not a strong probability that the lab

report would have changed the outcome of the trial. The State asserts that the question before the trial court in considering the motion was not whether a *Brady* violation had occurred, but whether McNeal had demonstrated by clear and convincing evidence that he was unavoidably prevented from discovering the potential evidence during trial and the 120 days thereafter. The State asserts that McNeal would have relied on the lab report in an attempt to impeach the victim and to contradict her testimony that she was very drunk at the time of the rape. The State asserts that "the lab report demonstrates that there was in fact alcohol in [the victim]'s system at the time of the offense" and that, "not only was there significant evidence presented that [the victim] was substantially impaired, but also that McNeal knew it."

{¶ 24} In reply, McNeal asserts that the crime-lab report obtained through the public records request "would have had little value" in support of his motion for leave to file a motion for new trial without the affidavit from trial counsel stating that the report was never provided in discovery. He also argues that "exculpatory evidence in the possession of *any* member of the prosecution team is viewed the same as if a prosecutor him- or herself possessed such evidence," and it is clear from the crime-lab report that it was issued directly to Officer Malott of the DPD, who was involved in the investigation and testified for the State at trial as to what he did during that investigation.

{¶ 25} With respect to whether the outcome of the trial was affected by the *Brady* violation, McNeal argues that, "ultimately, there [was] a reasonable probability that the withholding of the exculpatory crime-lab report regarding the lack of ethanol in [the victim's] bloodstream affected the jury's verdict, because [the victim] claimed it was the alcohol she consumed that night that caused her to be impaired." Thus, although the

State and the trial court allow for the possibility that the jury could have found that the victim was impaired due to substance abuse other than alcohol consumption based on the lab report, the victim's own testimony undercut such an inference. The victim testified that her last marijuana use had been two-to-three days before the incident, and that her anti-anxiety medication was taken through a prescription, "not by abuse." Again, McNeal contends that the report was in the possession of the State and not properly disclosed during discovery, and as a result, he was "unavoidably prevented from discovering the crime-lab report that he attached to his motion for leave to file a motion for a new trial."

{¶ 26} As this Court has noted:

Crim.R. 33(A)(6) permits a convicted defendant to file a motion for a new trial upon grounds that new evidence material to the defense has been discovered that the defendant could not with reasonable diligence have discovered and produced at the trial. However, such a motion must be filed within 120 days after the day of the verdict, unless the trial court finds by clear and convincing evidence that he was unavoidably prevented from discovering the evidence.

"In order to be able to file a motion for a new trial based on newly discovered evidence beyond the one hundred and twenty days prescribed in the above rule, a petitioner must first file a motion for leave, showing by 'clear and convincing proof that he has been unavoidably prevented from filing a motion in a timely fashion.' " *State v. Morgan*, Shelby App. No. 17-05-26, 2006-Ohio-145. "[A] party is unavoidably prevented from filing a

motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *State v. Walden*, (1984), 19 Ohio App.3d 141, 145-146, 19 OBR 230, 483 N.E.2d 859.

*State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 15-16 (2d Dist.).

**{¶ 27}** We have also noted:

Generally, "[a] reviewing court will not disturb a trial court's decision granting or denying a Crim.R. 33 motion for new trial absent an abuse of discretion." (Citation omitted.) *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 82. However, the Supreme Court of Ohio has indicated that a trial court's ruling on a motion for new trial claiming a *Brady* violation should be reviewed using "a due process analysis rather than an abuse of discretion test because the issue on review concern[s] [the defendant's] due process right to a fair trial, namely the suppression by the prosecution of evidence favorable to [the defendant]." *State v. Johnston*, 39 Ohio St.3d 48, 60, 529 N.E.2d 898 (1988). *Accord State v. Oldaker,* 4th Dist. Meigs No. 16CA3, 2017-Ohio-1201, ¶ 19; *State v. Webb*, 12th Dist. Clermont No. CA2014-01-013, 2014-Ohio-2894, ¶ 16; *State v. Keith*, 192 Ohio App.3d 231, 2011-Ohio-407, 948 N.E.2d 976, ¶ 41 (3d Dist.); *State v. Hoffman*, 11th Dist. Lake No. 2001-L-022, 2002-Ohio-6576, ¶ 19.

Based on this precedent, we review de novo a trial court's ruling on

a motion for new trial alleging a *Brady* violation, as the relevant inquiry is whether due process was violated by the prosecutor's failure to disclose evidence. *State v. Moore*, 3d Dist. Union No. 14-08-43, 2009-Ohio-2106, ¶ 19; *State v. Glover*, 2016-Ohio-2833, 64 N.E.3d 442, ¶ 35 (8th Dist.); *United States v. Bullock*, 130 Fed.Appx. 706, 722 (6th Cir.2005), citing *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir.1991) ("[t]he standard of review for the materiality of a purported *Brady* violation is *de novo* because it presents a mixed question of law and fact").

       * * *

       Pursuant to the United States Supreme Court's decision in *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. Therefore, in order to establish a due process violation under *Brady*, the defendant must demonstrate that: "(1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defendant; and (3) the evidence was material." *State v. Goney*, 2d Dist. Greene No. 2017-CA-43, 2018-Ohio-2115, ¶ 66; *Moore v. Illinois*, 408 U.S. 786, 794-795, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

       Because exculpatory and impeachment evidence are favorable to the defendant, both types of evidence may be the subject of a *Brady* violation, so long as the evidence is material. *United States v. Bagley*, 473

U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "Evidence is considered material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *State v. Royster*, 2d Dist. Montgomery No. 26378, 2015-Ohio-625, ¶ 16, quoting *Bagley* at 682. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Bagley* at 682.

"As a rule, undisclosed evidence is not material simply because it may have helped the defendant to prepare for trial." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 49. "The United States Supreme Court has rejected a standard of materiality that focuses 'on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, rather than the materiality of the evidence to the issue of guilt or innocence.' " *Id.*, quoting *United States v. Agurs*, 427 U.S. 97, 112-113, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), fn. 20.

Furthermore, no *Brady* violation occurs when the undisclosed evidence is cumulative to evidence already known by the defense at the time of trial. *See State v. Cook*, 1st Dist. Hamilton No. C-950090, 1995 WL 763671, *3 (Dec. 29, 1995). There is also no *Brady* violation "if the evidence that was allegedly withheld is merely cumulative to evidence presented at trial." (Citations omitted.) *State v. Bonilla*, 2d Dist. Greene No. 2008 CA 68, 2009-Ohio-4784, ¶ 26.

*State v. Smith*, 2d Dist. Montgomery No. 27853, 2018-Ohio-4691, ¶ 24-29.

**{¶ 28}** McNeal filed a petition for post-conviction relief on January 3, 2018, in which he asserted that defense counsel's "failure to investigate the rape victim's blood/urine test results allow[ed] an essential element of the state's case to go unproved and virtually unchallenged." McNeal asserted that defense counsel was aware that the victim had submitted to blood/urine testing during her sexual assault examination, and that counsel's performance "was prejudicial" because the amount and types of substances she consumed were "of paramount significance" to the issue of substantial impairment. McNeal asserted in his petition for postconviction relief that, if trial counsel had investigated whether the victim had taken a blood/urine analysis test, the results would have come to light. McNeal also filed a pro se motion for an order to produce the blood/urine test results.

**{¶ 29}** The State filed a motion to dismiss/motion for summary judgment in response to McNeal's petition for postconviction relief. On July 3, 2018, the trial court granted the State's motion, stating:

> The Court will not grant Defendant's request first because the Court has already found that there are no substantive grounds for granting this *Petition* and that Defendant's claims regarding whether the victim was substantially impaired at the time are barred by res judicata. Further, upon review of the transcript in this matter, Defendant's defense counsel argued vehemently to the jury that reasonable doubt existed as to whether the victim was substantially impaired at the time of the incident. Therefore, based on the amount of testimony and argument at trial as to whether the victim was impaired at the time of the incident makes her blood alcohol level

irrelevant to the matters at hand. Enough information is contained within the record to show and for the jury to believe that the victim was impaired at the time of the alleged crime. Finally, the Court cannot find that Defendant is prejudiced for lack of this Court order.

{¶ 30} We further note that, in affirming McNeal's conviction on direct appeal in July 2019, this Court noted that McNeal had argued that the State had failed to meet the "substantially impaired" element of R.C. 2907.02(A)(1)(c).[2] This Court noted the following facts:

> According to [the victim], on September 29, 2014, [the victim], Sister, Brother-in-Law, McNeal, and Leesa [McNeal's wife] decided to drink together. They went to a liquor store where [the victim] bought herself "a little bottle of Ciroc" and the others "all went in on a half-gallon of vodka." (Transcript ("Tr."), p. 233.) The five began drinking in [the victim]'s living room at about 7:00 to 7:30 p.m., while [her] son was asleep in the bedroom he and [the victim] shared and three of the McNeals' children were asleep in the other bedroom. [The victim] "drank the whole bottle" she had purchased "plus quite a bit" of the other bottle, as McNeal was encouraging [her] and Leesa to drink shots. (*Id.*, p. 244.) [The victim] "probably" smoked marijuana that night as well (*id.*, p. 239), and was taking Klonopin for

---

[2] R.C. 2907.02(A)(1)(c) states: "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when any of the following applies: * * * (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."

anxiety. (*Id.*, pp. 274-275.)

(Footnote omitted.)   *McNeal,* 2d Dist. Montgomery No. 28123, 2019-Ohio-2941, at ¶ 5.

**{¶ 31}** This Court concluded as follows:

In the absence of a statutory definition of "substantially impaired," this court has adhered to Supreme Court precedent holding "that 'substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of h[er] conduct or to control h[er] conduct.' " *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 21 (2d Dist.), quoting *State v. Zeh*, 31 Ohio St.3d 99, 104, 509 N.E.2d 414 (1987).   Substantial impairment "may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct."   *Id.*, quoting *State v. Dorsey*, 5th Dist. Licking No. 2007-CA-091, 2008-Ohio-2515, ¶ 43.   Substantial impairment also may be proven by the victim's own testimony.   *State v. Franklin*, 9th Dist. Summit No. 29071, 2019-Ohio-1513, ¶ 8, citing *State v. Daniels*, 9th Dist. Summit No. 25808, 2011-Ohio-6414, ¶ 6.

Both [the victim] and Sister testified that [the victim] had consumed vodka to the point of vomiting; Sister said that [the victim] also urinated on herself, but [the victim] said that she had been too intoxicated to even remember that happening.   Sister said that she and Leesa had to change [the victim]'s clothing for her and physically carry [her] from the bathroom to

her bed. Further, [the victim] described herself as having been "really, really drunk;" "so drunk I really couldn't * * * say yes [or] no." In light of such testimony, despite variations in the amount of alcohol [the victim] reported having drunk -- whether her own "little" bottle of vodka "plus quite a bit" from the communal bottle or just four or five shots in total – the evidence of record supported a finding that [the victim] was "substantially impaired" within the meaning of R.C. 2907.02(A)(1)(c). Evidence that [she] had recovered sufficiently to appear alert and oriented to the nurse who examined her some two hours after [the victim] experienced what she described as a "shock[ing]" trauma does not detract from that conclusion.

This case does not represent the "exceptional circumstance[ ]" in which the defendant's conviction should be reversed as being against the manifest weight of the evidence. *See Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. * * *

*McNeal* at ¶ 80-82.

{¶ 32} We conclude that the trial court properly overruled McNeal's motion for leave to file a motion for new trial for multiple reasons. We note that Wilder was appointed to represent McNeal on July 7, 2016, after prior counsel filed a motion to withdraw. At trial, on October 24, 2016, Bobbie Jo Russell testified that she is a sexual assault nurse examiner employed by SANE of Butler County. She stated that SANE nurses respond to hospitals "whenever the hospitals call us to report that there's been a sexual assault." Russell stated that she responded to Miami Valley Hospital to examine the victim, and in the in the course of completing the sexual assault kit, Russell "drew

blood and urine" from her to be sent to the crime lab to test what substances were present and her blood alcohol level. DPD Officer Malott testified that he collected the victim's sexual assault kit from Russell at the hospital and took it to the "evidence garage" to finish his paperwork on it; he then placed it in the refrigerator unit, and "one of the day crews" would then have transported the kit to the crime lab when it opened the following morning.

{¶ 33} Since the record reflects that McNeal was aware of the testing from at least the first day of his trial, his motion for leave was untimely, and he could not establish by clear and convincing evidence that he was unavoidably prevented from discovering the evidence; the evidence also was not new evidence. Although McNeal argues that the lab report could only be obtained by means of a post-trial public records request, he apparently made no such request in a timely manner. While McNeal relies upon the e-mail exchange with counsel attached to his motion for leave, wherein defense counsel indicated that he in fact had possession of the rape kit records, we cannot conclude that the State failed to disclose material evidence upon McNeal's request, in violation of *Brady;* the prosecutor's response that there were no hospital records made sense, because the victim's sexual assault kit was completed by Russell and not hospital personnel. Further, the evidence was not necessarily exculpatory or impeachment evidence. The victim testified at trial that she drank alcohol, smoked marijuana, and took Klonopin, an anti-anxiety medication, and components of those substances were reflected in the test results. Given the significant testimony about the victim's substantial impairment, we cannot conclude that the test results would have altered the outcome of McNeal's trial. As the State asserts, McNeal did not request a hearing on his motion. Finally, since McNeal argued vehemently at trial, in his petition for post-conviction relief, and on appeal

that the victim had not been substantially impaired at the time of the offense, his motion for leave was barred by the doctrine of res judicata.[3]

{¶ 34} For all of the foregoing reasons, McNeal's assigned error is overruled.

{¶ 35} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Heather N. Ketter
Craig M. Jaquith
Hon. Dennis J. Adkins

---

[3] "The doctrine of res judicata bars a criminal defendant from raising and litigating in any proceedings any defense or claimed lack of due process that was raised or could have been raised on direct appeal from the conviction. Res judicata applies to the litigation of any post conviction issues which were or could have been litigated on direct appeal." (Citations omitted.) *State v. Young*, 2d Dist. Montgomery No. 20813, 2005-Ohio-5584, ¶ 8.